WEST v. EDWARD RUTLEDGE TIMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 15, 1915.)

No. 2416.

PUBLIC LANDS ☞82—SELECTION OF UNSURVEYED LIEU LANDS—SUFFICIENCY OF DESIGNATION.

Act March 2, 1899, c. 377, 30 Stat. 993 (Comp. St. 1913, §§ 5223–5226) establishing Mt. Rainier National Park, by section 3 authorized the Northern Pacific Railroad Company, on conveying to the United States lands in the reservation theretofore granted to said company to select in lieu thereof an equal quantity of nonmineral public land not reserved, and to which no adverse rights had attached, lying in any state through

which the railroad ran; and section 4 provided that, "in case the tract so selected shall at the time of selection be unsurveyed, the list filed by the company at the local land office shall describe such tract in such manner as to designate the same with a reasonable degree of certainty." *Held* that, in view of prior rules of the Land Department governing similar cases, and in the absence of any specific regulation under said act, a designation in a list of unsurveyed land filed by the company of a tract according to the description by which it would be known when surveyed was legally sufficient, where the tract was within three miles of a surveyed township and could be then located with approximate certainty.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 236, 253-256; Dec. Dig. ☞82.]

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity by Andrew West against the Edward Rutledge Timber Company and the Northern Pacific Railway Company. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 210 Fed. 189.

A. H. Kenyon and Seabury Merritt, both of Spokane, Wash., for appellant.

James B. Kerr, of Portland, Or., and Stiles W. Burr and Horace H. Glenn, both of St. Paul, Minn., for appellee Edward Rutledge Timber Co.

E. J. Cannon, of Spokane, Wash., and Charles W. Bunn and Charles Donnelly, both of St. Paul, Minn., for appellee Northern Pacific Ry. Co.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is a suit by Andrew West to have the defendant Edward Rutledge Timber Company declared a trustee of the title to the S. E. ¼ of section 20, township 44 N., range 3 E., Boise meridian, situate in the state of Idaho, for his use. The Northern Pacific Railway Company, the successor to the Northern Pacific Railroad Company, with a view to making lieu selections in pursuance of the act of March 2, 1899, filed in the United States Land Office at Cœur d'Alene, Idaho, on June 21, 1901, its selection list No. 61, designating for selection tracts of land "when surveyed" to be described, among others, all of section 20, township 44 N., range 3 E., Boise meridian. Later, to wit, on July 31, 1905, the company filed its new selection list, describing the land definitely by its legal subdivisions. The plat of the government survey of township 44 was filed in the local land office July 17, 1905. Patent was issued by the government October 13, 1910. The timber company is the successor to the Northern Pacific Railway Company. When the first selection list was filed township 45 N., range 3 E., the one next on the north of 44, had been surveyed and the plat filed in the local land office.

West settled upon the quarter section above described May 15, 1903, having bought out John Hanson, who had previously settled on the tract and made some improvements thereon. West continued his residence, making further improvements, and on July 17, 1905, filed in

the local land office an application to make homestead entry of the land, which was rejected by the register and receiver on the ground that the Northern Pacific Railway Company had previously made selection of the same by their list No. 61, in pursuance of the act of March 2, 1899, which rejection was subsequently approved by the Commissioner of the General Land Office, and later by the Secretary of the Interior.

The act of March 2, 1899 (30 Stat. 993), is an act to set aside certain public lands to be known as the Mt. Rainier National Park. By section 3 the Northern Pacific Railroad Company, upon relinquishing to the government lands comprised by the park which had been theretofore granted to the railroad company, was authorized—

"to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey, which has been or shall be made, of the United States not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection, lying within any state into or through which the railroad of said Northern Pacific Railroad Company runs, to the extent of the lands so relinquished and released to the United States."

Section 4 provides:

"That upon the filing by the said railroad company at the local land office of the land district in which any tract of land selected and the payment of the fees prescribed by law in analogous cases, and the approval of the Secretary of the Interior, he shall cause to be executed, in due form of law, and deliver to said company, a patent of the United States conveying to it the lands so selected. In case the tract so selected shall at the time of selection be unsurveyed, the list filed by the company at the local land office shall describe such tract in such manner as to designate the same with a reasonable degree of certainty; and within the period of three months after the lands including such tract shall have been surveyed and the plats thereof filed by said local land office, a new selection list shall be filed by said company, describing such tract according to such survey; and in case such tract, as originally selected and described in the list filed in the local land office, shall not precisely conform with the lines of the official survey, the said company shall be permitted to describe such tract anew, so as to secure such conformity."

To prevail, the plaintiff must sustain the position that the description contained in the railway company's selection list first filed was, as matter of law, insufficient to support the selection, for if it depended on a matter of fact the controversy would be settled by the judgment of the Land Department in rejecting the application of West for homestead entry and approving the selection of the railway company. "It has undoubtedly been affirmed over and over again," says the Supreme Court, "that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final." Burfenning v. Chicago, St. Paul, etc., Ry., 163 U. S. 321, 323, 16 Sup. Ct. 1018, 1019 (41 L. Ed. 175).

It would seem that the Land Department had not, prior to the time that the railway company filed its first selection list, No. 61, adopted or promulgated any rules or regulations prescribing the manner of describing lands sought to be selected by the railway company under the specific act of March 2, 1899. Rules were prescribed by the Land Department relative to the selection of lieu lands by the Northern Pa-

cific Railroad Company, or its grantee, under the act of July 1, 1898, by which it was required that:

"The selection must be of the whole or some legal subdivision of a designated odd-numbered section, so that the public survey when made will give identity to the land selected."

And, further, that:

"Selections of unsurveyed lands by an individual claimant must be designated according to the description by which they will be known when surveyed, if that be practicable, or, if not practicable, by giving with as much precision as possible the locality of the tract with reference to known land marks, so as to admit of its being readily identified when the lines of survey come to be extended."

These rules were promulgated February 14, 1899, 28 Land Dec. Dept. Int. 103, 108.

The statute itself provides that:

"All selections of unsurveyed lands shall be of odd-numbered sections to be identified by the survey when made."

At a later date, namely, May 9, 1899, the Department promulgated another rule relating specifically to lieu selections connected with forest reserves (the act allowing such selections having been adopted June 4, 1897 [30 Stat. 36]), which provides:

"Every selection of unsurveyed land must designate the same according to the description by which it will be known when surveyed, if that be practicable, or, if not practicable, must give, with as much precision as possible, the locality of the tract with reference to known landmarks, so as to admit of its being readily identified when the lines of public survey come to be extended." 28 Land Dec. Dept. Int. 521, 523.

The adoption of the latter rule seems to have been made necessary by a previous decision of the Land Department holding that unsurveyed as well as surveyed lands were subject to lieu selection under the act of June 4, 1897. F. A. Hyde et al., 28 Land Dec. Dept. Int. 284.

These rules were in effect, therefore, when the railway company made its selection No. 61, but were framed, as we have seen, with specific reference to the acts of June 4, 1897, and July 1, 1898. But by virtue of their general terms the rules may readily have been made applicable to the selection of all unsurveyed lands.

On February 21, 1908, the Interior Department issued a circular in terms applicable to all forms of scrip, warrants, certificates, soldiers' additional homestead rights, and lieu selections, of whatever kind, which provided for the posting on the land of notice of the selection application or entry, the same to govern on and after April 1, 1908. 36 Land Dec. Dept. Int. 278.

On November 3, 1909, the Commissioner of the General Land Office, in order to remedy the confusion and uncertainty arising from applications and selections for filings and locations upon unsurveyed public lands, promulgated another rule prescribing that such selection, filing, or location must contain a description of the land by metes and bounds, with courses, distances, monuments, and—

"the approximate description of the land, by section, township, and range, as it will appear when surveyed must be furnished, or, if this cannot be done, an

affidavit must be filed setting forth a valid reason therefor." 38 Land Dec. Dept. Int. 287.

This in the way of tracing the history of the promulgation of rules by the Land Department as it relates to describing lands in filings by entrymen and in lieu selections. It stands to reason that none of these rules can have a retroactive effect, and persons making filings and selections prior to their promulgation cannot be charged with their observance. Such has been the practice and ruling of the Land Department. Hanson et al. v. Northern Pacific Ry. Co., 38 Land Dec. Dept. Int. 491; F. A. Hyde et al., 40 Land Dec. Dept. Int. 284.

The question as to the sufficiency of a selection descriptive in terms of future survey came up in the Land Department in the Hanson Case, and was determined in the affirmative. There was involved in the case the W. ½ of the S. W. ¼, the N. E. ¼ of the S. W. ¼, and the N. W. ¼ of the S. E. ¼ of section 21, township 44, a section lying alongside of the section comprising the lands in dispute here. In a recent case, Daniels v. Northern Pacific Ry. Co., decided August 3, 1914, the Department has affirmed its holding in the Hanson Case, and by express terms overrules the case of F. A. Hyde et al., supra, so much relied upon by counsel for plaintiff in support of the opposite view. In the Hanson Case it does not appear that any proximate township or other government line had been run at the time of making the selection, and still it was held that a selection by description in terms of future survey was sufficient. The learned Assistant Secretary who rendered the decision had cause to remark that:

"The practice of describing unsurveyed land in terms of a future survey thereof has been in existence for many years, and was never challenged prior to the decision of F. A. Hyde et al., supra."

From the foregoing it not only appears that the practice of describing lands for entry or selection in terms of future survey has been sanctioned by the rules and regulations of the Land Department and its decisions, but by statute, though it has latterly been considered the better practice to require a more particular description. Thus we are thrown back to the primary inquiry, whether the description contained in the railway company's selection designates the tract with a reasonable degree of certainty, notwithstanding the practice and decisions of the Land Department. The decisions of the Land Department as to its own authority are entitled to respect and are persuasive; but if the Department has exceeded its power its acts are coram non judice and void. Of course, when the law has declared what is a sufficient description it must be held to be controlling. That Congress, as it did by the act of July 1, 1898, and that the Land Department, as it did by its earlier rules and regulations, and its rulings and decisions, should have regarded a description in terms of future survey as sufficient, is strongly persuasive of its legal sufficiency.

It may be conceded, in so far as it respects this case, that a description of a section or a quarter section by legal subdivisions in the fastnesses of the Cascades or Rocky Mountain ranges, far distant from any government survey, or even generally that a description in terms of future survey, is not such a description as is contemplated by the

statute. What may be a sufficient description for designating the tract under one set of circumstances might be wholly insufficient under another. Every one is presumed to know the method by which government surveys are made, and what is meant by township and range, and what by section and quarter section, or other legal subdivisions, and the relation of one township to another and of one section with its subdivisions to another. So that, for instance, if township 2 N. is surveyed, and a tract is described as section 1 in township 1 N., there could be no question that the tract was designated with a reasonable degree of certainty. It would be the section immediately south of surveyed section 36 in township 2 N. It is a maxim that that is certain which can be made certain, and its application would make the result perfectly manifest. Section 1 in that case would be tied directly to fixed monuments, to wit, the southeast corner of township 2, and the southeast and southwest corners of section 36 in that township. To designate signifies:

"To mark out or indicate by visible lines, marks, description, name, or something known and determinate." Century Dictionary.

A description by legal subdivision is a perfectly intelligible designation of a tract of land, so it must follow that a description which will be a legal subdivision when surveyed, if lying adjoining a subdivision already surveyed, is also a perfectly intelligible description; and any one at all familiar with the government surveys could not be mistaken as to what was meant by the designation, and would be ready to locate the premises. Such a description would be absolutely good in a contract or deed, and would convey title.

Now, if we move away a step farther from the established survey, and describe the tract to be selected as section 12, township 1 N., it would not be a difficult task to set foot on the land and determine accurately its limitations. There would still be a reference back or a tying back to section 36, township 1 N. But the farther the remove from an established survey, it stands to reason, the greater will be the difficulty of setting foot on the identical tract, until eventually no reasonable being could expect another to tie back to a known surety for the purpose of identification.

Section 20, the tract designed to be selected by the railway company, is situate three miles south of section 32 in township 45, a surveyed township, and could be readily located from such survey, although in a rough country, so that one could not widely mistake the premises on the ground. In fact, Olaf Edin, who helped run the exterior lines of the West claim in 1901, says:

"We undertook to tie them up to the government lines, which had already been run, as near as we could."

The selection list was filed in the local land office, and this was notice to all parties that the railway company claimed the land, if its designation of the tract was legally sufficient.

The purpose of the statute was not that the selector should so describe the land as that the government could make its patent by such description, for it contemplates that the land shall be described anew

when surveyed by legal subdivisions, and that the patent shall carry that description. An exact description is therefore unimportant, but the applicant must designate the tract designed to be selected with a reasonable degree of certainty. The filing of the first list is in a sense preliminary to obtaining the patent. It initiates the right, and not as much particularity and exactness is ordinarily required as where final stages are to be observed in clearing up and completing the transaction. In fact, by contemplation of the statute, the new selection is required to conform with the established survey, and thus to correct the description in the primary selection. By reasonable intendment, therefore, we are impressed that the description contained in the railway company's list No. 61, under the conditions prevailing of the survey of township 45 to the north and the proximity of the land in question thereto, designated the land with a reasonable degree of certainty, and must be held sufficient as a matter of law.

It is urged that Congress must have intended a more particular description than one in terms of future survey by reason of the use of different language in denoting the manner of description in the act of March 2, 1899, from·that employed in the act of July 1, 1898. But, if this be true as a general rule, nevertheless, for the reasons above stated, the description in the present case in terms of future survey, under the conditions existing, designates the land sought to be selected with a reasonable degree of certainty.

That being the single question urged here for our decision, the decree of the District Court is affirmed, with costs to the respondents.