# WEST v. EDWARD RUTLEDGE TIMBER COMPANY ET AL.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 276.   Argued May 7, 8, 1917.—Decided May 21, 1917.

The Act of March 2, 1899, c. 377, 30 Stat. 993, in providing for conveyance to the United States by the Northern Pacific Railroad Company of lands within the Mount Ranier National Park in exchange for public lands to be selected elsewhere, is to be construed as extending to that company's successor in title though no successor is named; and the Northern Pacific Railway Company, recognized as such successor by the Land Department both in the making of the conveyance of base lands and in the enjoyment of the right of lieu selection, is not to be denied that right upon the hypothesis that the Northern Pacific Railroad Company had ceased to exist before the date of the act.

In surveying and reporting on public lands, a deputy surveyor described them as suitable for grazing, if cleared, but more valuable for timber at the time. This having been accepted and acted upon by the Land Department as a description of the lands as nonmineral, *Held*, that they were to be regarded as "classified as nonmineral at the time of actual Government survey," for the purposes of lieu selection by the Northern Pacific Railway Company under the Act of March 2, 1899, *supra*.

Whether a preliminary lieu selection of unsurveyed public land may be said to designate the tract "with a reasonable degree of certainty," under the Act of March 2, 1899, *supra*, is a question in the nature of a question of fact to be determined upon the circumstances of each case. A description in terms of future survey may suffice if the land may be located therefrom with the aid of an adjoining survey already made.

*Semble*, that the rule limiting inquiry in this court to questions presented to the court below (*Montana Railway Co.* v. *Warren*, 137 U. S. 348) is not confined to questions of procedure and is not inflexible.

221 Fed. Rep. 30, affirmed.

SUIT by appellant West (he was plaintiff in the court below and we shall so refer to him) against appellees, the Edward Rutledge Timber Company and the Northern Pacific Railway Company (to be referred to as the timber company and railway company, respectively,) to have plaintiff declared the owner of certain described lands, the railway company and the timber company decreed to hold title thereto in trust for him, to compel a conveyance to him and to have his title to the lands quieted.

Plaintiff alleged himself qualified to locate and did locate and settle upon the lands, they being then unsurveyed and vacant, unoccupied and unreserved lands belonging to the United States as to which no claim of right or title to or interest in them had been made by any person, nor was there any evidence whatsoever upon the lands or any part thereof, or in the United States Land Office for the district (Coëur d'Alene Land District), or in the General Land Office in Washington showing any claim, right, title or interest in any other person, nor were there any marks, blazes, notices or any other evidence of the location, selection, claim or possession marked or traced upon the ground, or upon or near the same, nor had the boundaries thereof been traced or located by reference to any natural objects or monuments of any kind or character.

That on July 17, 1905, the official plat of the survey of the lands was filed in the local land office in Coeur d'Alene City, Idaho, and on that day the lands became open to entry under the homestead laws of the United States and on that day plaintiff duly made application to enter them under the homestead laws, which application was rejected by the local land office, and, on May 10, 1910, the order of rejection was approved by the Secretary of the Interior and the case finally closed.

That on June 21, 1901, the railway company filed in the General Land Office its selection list No. 61 which con-

tained the following pretended description, to-wit, "the Southeast Quarter of Section 20, Township 44 North, Range 3 E., B. M."

That the description was wholly imaginary and that no lands in the State of Idaho or elsewhere were or could be so designated or described for the reason that at the time of filing the list no such survey had been made or attempted. That neither the railway company nor the timber company knew or pretended to know what lands were referred to or knew that in the event of a survey the description would be applied to the lands occupied by plaintiff. That the description was wholly insufficient to locate the lands or any part or parcel thereof, rendering the list and selection of the railway company wholly void and of no effect whatsoever.

That on October 10, 1910, a patent to the lands was issued to the railway company.

That (this on information and belief) the railway company conveyed the lands to the timber company and that company now claims to have the legal title to the same.

That neither the railway company nor the timber company nor any agent or employee of either has ever been in possession of the lands, but plaintiff, ever since May 15, 1903, has been and now is in possession thereof; that neither the railway company nor the timber company has ever complied with the laws of the United States so as to entitle either of them to claim any interest in or right to the lands as against plaintiff.

That the decision of the local land office and the successive approval thereof by the Commissioner of the General Land Office and the Secretary of the Interior were and are wrongful, unlawful and based upon an erroneous construction of the law and upon a statement of facts concerning which there was and is no conflict.

That at the time the patent was issued to the railway

company plaintiff was and now is the owner of the lands and the issue of the patent to the railway company was contrary to and without authority of law and in violation of plaintiff's rights; that the railway company was without any right or authority at law to select or claim the lands or any part thereof and that the Act of Congress of March 2, 1899, upon and by virtue of which the railway company based its right to select and claim the lands, is unconstitutional and void and confers no right whatsoever upon the railway company to select or claim the lands or any part thereof against plaintiff.

The answer of the timber company admitted certain allegations of the bill of complaint but denied that the lands were vacant and open to settlement or that they were unclaimed or unsegregated or not marked or traced by boundaries, and alleged that the fact of their appropriation and segregation appeared on the records of the local land office and of the General Land Office and that the boundaries and lines of survey were duly and plainly traced and marked out upon the lands and located by monuments long prior to the time of plaintiff's settlement thereon, and that plaintiff had full knowledge thereof and did not enter upon the lands in good faith but only in the hope that the claim of the timber company and railway company might be defeated on technical grounds.

That on June 21, 1901, the railway company made selection of the lands under the provisions of the Act of Congress entitled "An Act To set aside a portion of certain lands in the State of Washington, now known as the Pacific Forest Reserve, as a public park, to be known as the Mount Ranier National Park," approved March 2, 1899, 30 Stat. 993, in lieu of an equal quantity of land relinquished to the United States pursuant to the provisions of the act. That such selection was duly made in accordance with the conditions of the act and the rules and regulations of the Land Department and described

as required by the act, and the selection was in all respects regular.

That on July 17, 1905, the official township plat was filed in the local land office and the railway company, in accordance with the provisions of § 4 of the act of Congress, filed a new selection list which conformed to the provisions of the act and the rules and regulations of the Land Department.

That at the time plaintiff made his alleged settlement upon the lands they had been surveyed and the lines of survey traced, and all other conditions are alleged to have been satisfied.

The timber company prayed that it be dismissed with costs.

The answer of the railway company was substantially the same as that of the timber company.

To the issues thus framed the evidence was addressed, upon which a decree was entered for defendants dismissing the bill, neither party to recover costs or disbursements from the other. 210 Fed. Rep. 189. It was affirmed by the Circuit Court of Appeals. 221 Fed. Rep. 30.

*Mr. S. M. Stockslager,* with whom *Mr. A. H. Kenyon* and *Mr. Seabury Merritt* were on the briefs, for appellant.

*Mr. Charles Donnelly* and *Mr. Stiles W. Burr,* with whom *Mr. Charles W. Bunn* and *Mr. James B. Kerr* were on the brief, for appellees.

MR. JUSTICE McKENNA, after making the above statement, delivered the opinion of the court.

The controversy in the case turns on the construction and application of the act of Congress. Because of it the land offices, local and general, rejected plaintiff's application to enter the lands as a homestead. By virtue of it the railway and its grantee, the timber company, assert

title. Its primary purpose was to set aside certain public lands as a national park to be known as the Mount Ranier National Park. An obstacle to the purpose was a grant of the desired lands to the Northern Pacific Railroad Company and their relinquishment had to be provided for. This was done (§ 3) by authorizing the company to select an equal quantity of public lands elsewhere, or, more specifically, within any State into or through which the railroad ran. There was qualification of the character of the lands to be selected. They were to be "nonmineral public lands, so classified as nonmineral at the time of actual Government survey, which has been or shall be made, . . . not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection."

It was provided (§ 4) that upon the filing by the railroad company of the selection at the local land office and payment of fees prescribed by law in analogous cases and the approval by the Secretary of the Interior, he should cause a patent to issue to the company conveying to it the lands so selected; that "in case the tract so selected shall at the time of selection be unsurveyed, the list filed by the company . . . shall describe such tract in such manner as to designate the same with a reasonable degree of certainty"; and that within three months after the tract shall have been surveyed and the plats thereof filed a new selection shall be filed by the company describing the tract according to such survey. And, further, that in case the tract as originally selected and described in the list filed in the local land office shall not precisely conform to the lines of the official survey, the company shall be permitted to describe such tract anew, so as to work such conformity.

Construing the act by its words there would seem to be no difficulty in determining its meaning. It would seem to be simple in purpose and clear in provision to accom-

plish the purpose. But plaintiff raises various questions upon it. He asserts: (1) That the grant was to the Northern Pacific Railroad Company and could not be availed of by its successor through foreclosure, the Northern Pacific Railway Company. (2) That the lands were classified as mineral under the Act of Congress of February 26, 1895, 28 Stat., 683, and the classification approved by the Secretary of the Interior March, 1901, and the surveyor having failed to make any classification of the lands in terms as non-mineral they were not subject to selection. (3) That if the first and second contentions be untenable, the lands were not described "with a reasonable certainty" so as to bar the rights of settlers in good faith without actual or constructive notice.

(1) The argument advanced to support this proposition is that by the foreclosure proceedings the Northern Pacific Railroad Company ceased to exist and, if everything it had or had an interest in did not go out of existence with it, at least its rights under the Act of 1899 did, and yet counsel say plaintiff has nothing to do "with the question whether the conveyance of the lands to the United States under the provisions of the act conveyed a valid title." It would be somewhat anomalous indeed if the act conveyed to the United States a valid title but did not convey to the railroad anything substantial that could be transferred by sale under the decree of a court to the successor of that company. We might ask the question, Where in the world were the rights conveyed to the railroad company left—and if left at all, by whom were they to be enforced or availed of?

We agree with the District Court that as a mere matter of construction the contention of plaintiff must be rejected. In July, 1896 (*Northern Pacific Ry. Co.* v. *Boyd*, 228 U. S. 482, 490; *Northern Pacific Ry. Co.* v. *United States*, 176 Fed. Rep. 706), three years prior to the act of Congress, the railway company had become successor to the

railroad company, its vendor through the foreclosure proceedings of the lands the Government desired, and yet the latter company was designated in the act as the company to select the lands in compensation for those desired and taken by the Government for the Mount Ranier National Park. It may be, as said by the District Court, a matter of speculation why the railroad company rather than the railway company was named as grantee, but it is certain it was done in recognition of rights and not in mere jugglery to obtain lands for the National Park and convey nothing to either company in return—nothing to the railroad company because, according to the contention, it had gone out of existence; nothing to the railway company because, according to the contention, it had not succeeded to the rights of the railroad company. On the contrary, we must assume that the act was passed and the railroad company selected to consummate the exchange either by itself or by its successor, the railway company, or by both. And this was done and the two companies and the trustees of the railway company's mortgage joined in a deed of reconveyance to the United States. And this purpose of the act and what was done under it was recognized by the Land Department. *Davenport* v. *Northern Pacific Ry. Co.*, 32 L. D. 28; *Ferguson* v. *Northern Pacific Ry. Co.*, 33 L. D. 634; *Idaho* v. *Northern Pacific Ry. Co.*, 37 L. D. 135, 138. See also *Delany* v. *Same*, 45 L. D. 6. It is pertinently said by counsel for the railway company: "The government itself is satisfied with its title; and certainly it cannot, while retaining that title, deny to those from whom it was obtained the lands offered in exchange."

(2) As we have seen, the right was to select "an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual Government survey." The lands are in fact non-mineral, but the contention is that they were not so classified at the time of actual survey.

The deputy surveyor who made the survey reported that the lands, if cleared, would be suitable for grazing, but at the time of the report were more valuable for their timber. This, it is contended, is not a classification of the lands as non-mineral, that it was not a classification but an omission to classify—negative, not affirmative; inferential, not positive—and therefore not a compliance with the statute. We cannot concur. The report was accepted by the department as a description of the lands as non-mineral. They could be made suitable for grazing, was the report; pending that time they were more valuable for their timber. There was positive description of their character; words excluding some other character were not necessary. Classification is characterization through the selection of some quality or feature, and therefore lands may be classified as pasture (grazing), timber, arable or mineral. It is determined by surface indications. Minerals may be hidden under any surface, but a surveyor is not expected to explore for them that he may include or exclude reference to them in his reports. Such character is exceptional, besides, and considered by the land office as absent if not noted.[1]

The contention that the lands were classified as mineral under the Act of February 26, 1895, is answered by the admission made at the trial that the records do not show it.

(3) The act of Congress authorized the selection of an unsurveyed tract, but required it to be described "in such manner as to designate the same with a reasonable degree of certainty," and it was provided that when surveyed a new list was to be filed describing the tract "according to such survey."

The lands, we have seen, were designated by sectional

---

[1] *Davenport* v. *Northern Pacific Ry. Co.*, 32 L. D. 28; *Bedal* v. *St. Paul, M. & M. Ry. Co.*, 29 L. D. 254; *Idaho* v. *Northern Pacific Ry. Co.*, 37 L. D. 135; *St. Paul, M. & M. Ry. Co.*, 34 L. D. 211; *Northern Pacific Ry. Co.*, 40 L. D. 64.

number, township and range, and it is contended that such designation—"terms of future survey," as counsel term it—was not a description "with a reasonable degree of certainty."

This seems to have been the only contention submitted to the Court of Appeals and upon careful consideration the court decided against the contention upon the Act of 1899 and, in analogy, upon other acts of Congress in relation to the public lands and also upon the rules and decisions of the Land Department. It is not necessary to repeat the reasoning of the court. What was a description having "a reasonable degree of certainty" was to be determined by the circumstances. It was in the nature of a question of fact and had tests for decision, as the Court of Appeals pointed out. It had the aid of an adjoining survey and the lands could be readily located from such survey. It was pointed out that the act of Congress did not require exactness; it contemplated a subsequent readjustment. "The filing of the first list is in a sense preliminary to obtaining the patent. It initiates the right, and not as much particularity and exactness is ordinarily required as to where final stages are to be observed in clearing up and completing the transaction. In fact, by contemplation of the statute, the new selection is required to conform with the established survey and thus to correct the description in the primary selection. By reasonable intendment, therefore, we are impressed that the description contained in the Railway Company's list No. 61, under the conditions prevailing of the survey of Township 45 to the north and the proximity of the land in question thereto, designated the land with a reasonable degree of certainty, and must be held sufficient as a matter of law." For the premises from which this excerpt is the conclusion we refer to the opinion.

The Court of Appeals said that the question of the sufficiency of the description was "the single question

urged " for its decision and counsel for defendants contend that no other question is open to our review, and cite *Montana Railway Co.* v. *Warren,* 137 U. S. 348, 351. Plaintiff replies that the principle of that case applies only to questions of procedure and not to questions of jurisdiction or the foundation of the right, adducing *Rosen* v. *United States,* 161 U. S. 29; *Old Jordan Mining & Milling Co.* v. *Société Anonyme Des Mines,* 164 U. S. 261; *Gila Valley, Globe & Northern Ry. Co.* v. *Hall,* 232 U. S. 94. See also *Magruder* v. *Drury,* 235 U. S. 106, 113.

The distinction between questions seems to be artificial. The essential circumstance would seem to be that a review is sought of that which was not decided, not submitted at all or withdrawn from submission and which, if it had been submitted, might have been decided in favor of the appealing party.

However, in deference to the earnestness of counsel, we have considered the questions.

*Affirmed.*