### FARRELL v. EDWARD RUTLEDGE TIMBER CO. et al.

(District Court, D. Idaho, N. D.   July 1, 1918.)

1. **Public lands** ⟐106(1)—**Department's finding description was sufficiently certain not disturbed.**
   Within reasonable limits, it is a question of fact whether the description of lands in a railroad company's selection list in terms of future survey designated the lands with reasonable degree of certainty, and the finding on such issue by the Land Department within such limits will not be disturbed by the courts.

2. **Time** ⟐8—**Publication of notice of state's application for survey of public lands held for 30 days.**
   Where the state's application for a survey of public lands under Act Aug. 18, 1894, was received by the Commissioner of the General Land Office on July 15th, before which it did not become effective for any purpose, a publication of the notice of such application in six weekly issues of a local paper, the first being on July 10th, and the last on August 14th was sufficient compliance with the requirement of publication for 30 days, since, assuming that the first effective publication is that of July 17th, the publication was made in every issue of the paper published during the 30-day period following the filing of the application.

3. **Public lands** ⟐23—**Commissioner can reject state's application for survey of excessive tract.**
   Under Act Aug. 18, 1894, authorizing application by the state for a survey of townships from which to make a selection of lands, the area to be surveyed must bear some reasonable relation to the area the state has the right to select, and where the application was for the survey of a vast area of land, of which the state had the right to select only a small portion, the Commissioner of the General Land Office had jurisdiction to refuse the application.

4. **Public lands** ⟐81(3)—**Survey application does not withdraw land before acceptance or recognition by department.**
   The rule that an invalid application for valid entry of public land segregates such land requires that such application must in some way be accepted or recognized by the Land Department, even though erroneously,

---

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

so that an application of the state for the survey of lands did not segregate such lands, preventing selection thereof by a railway company, where at the very outset the Commissioner of the General Land Office rejected the application.

**5. Public lands ⟨⟩81(3)—State's application for survey does not prevent entry by another subject to state's preference right.**

An application by the state for a survey under Act Aug. 18, 1894, does not give the state a claim or right to any portion of the land, though the act does use the terms "reserved" and "withdrawn," but merely gives the state a preference right to select lands therefrom at its option, and in the meantime such lands can be entered by the filing of other applications, subject to such preference right.

**6. Public lands ⟨⟩81(3)—Railroad can select subject to state's preference right.**

The provision of Act March 2, 1899 (Comp. St. §§ 5223–5226), authorizing a railroad company to select in lieu of relinquished lands an equal quantity of nonmineral public lands not reserved, and to which no adverse right or claim has attached or been initiated, does not deprive the railroad of the right to apply thereunder for lands included in an application by the state for a survey subject to the preference right of the state.

In Equity. Suit by Beldon M. Delaney, for whom was substituted Alra G. Farrell, against the Edward Rutledge Timber Company and another. Bill dismissed.

Decree affirmed 254 U. S. ——, 41 Sup. Ct. 328, 65 L. Ed. —— which reversed 258 Fed. 161. 169 C. C. A. 229.

A. H. Kenyon, of Spokane, Wash., and S. M. Stockslager, of Washington, D. C., for plaintiff.

Stiles W. Burr, of St. Paul, Minn., and Skuse & Morrill, of Spokane, Wash., for defendant Edward Rutledge Timber Co.

Cannon & Ferris, of Spokane, Wash., for defendant Northern Pac. Ry. Co.

DIETRICH, District Judge. The issues are greatly reduced by the decision in West v. Edward Rutledge Timber Co. (244 U. S. 90, 37 Sup. Ct. 587, 61 L. Ed. 1010; 221 Fed. 30, 136 C. C. A. 556; [D. C.] 210 Fed. 189), a case arising in the same locality and out of the same general conditions. The relief sought is of the same character in both cases, and the facts are so similar that they need not be stated in full. The land in controversy is the northeast quarter of section 20, township 43 north, range 4 east of Boise meridian. It was patented to the Northern Pacific Railway Company in 1916, and by it conveyed to its codefendant, the Edward Rutledge Timber Company. Plaintiff contends that in law her ancestor, Beldon M. Delaney, was entitled to patent by virtue of his homestead settlement, and that the defendants hold the title in trust for her. Prior to 1909 the land was unsurveyed. Delaney, having purchased the improvements erected by a preceding occupant, made settlement in 1903, and in 1909, when the land was surveyed, he made application to enter, and later, on November 20, 1912, submitted his final proof. Both the application and the tender of final proof were rejected by the Land Office.

. 1. Delaney's acts of settlement and residence are far from satisfactory, and I have great hesitancy in holding them sufficient. True, the showing is not radically different from that in the West Case, but in that case the amount cleared and cultivated was thought to be "pathetically small," and, however broad our sympathy for the settler, a line must be drawn somewhere. I am not at all sure that the land officials would have found the showing adequate had they considered the final proof, but inasmuch as their rejection was upon other grounds, I shall, in the further consideration of the case, assume that the residence and improvements met the requirements, under the liberal policy prevailing in the Land Department, and that the final proofs would have been accepted, but for other conditions upon which the land officials acted.

[1] 2. The description in the railroad company's selection list was in terms of future survey, as in the West Case, and, while the distance to the surveyed lands is a little greater, the difference is not such as to warrant a holding that as a matter of law the description was insufficient to designate the land "with a reasonable degree of certainty." Within reasonable limits, it is a question of fact in any case whether such a description is sufficiently certain, and a finding thereon by the Land Department within such limits will not be disturbed by the courts.

3. The remaining point, argued with great earnestness by both sides, was in no wise involved in the West Case, and requires a brief statement of fact. The defendant railway company filed its selection lists, under the exchange provision of Act March 2, 1899, c. 377, 30 Stat. 993 (Comp. St. §§ 5223–5226), on July 23, 1901, about a year before settlement by any person. A few days prior to such selection, however, the state of Idaho had made application for the survey of a large body of land, including that in controversy, under the provisions of Act Aug. 18, 1894, 28 Stat. 372, 394, and the question is whether the proceedings taken by the state prior to July 23d operated so far to withdraw the land from the public domain that it could not be selected by the railroad company, either absolutely or conditionally. By the Land Department the question was answered in the negative—first, because there was no valid, effective application for survey before the railroad company filed its selection list; and, second, because, by the settled construction of the department, lands, even though embraced in a valid application for survey by the state may be selected by a railroad company, subject to the state's preference right. Such preference right the state has here failed to assert, and no claim upon its part is presently involved.

Under the act of 1894 it is provided that (a) the application for survey must be made by the Governor of the state to the "Commissioner of the General Land Office"; (b) notice of the withdrawal or reservation of the land is to be immediately given by the Commissioner to the Surveyor General of the state, and to the district Land Office; and (c) within 30 days from the filing of the application the Governor of the state must give notice of the application by publication for 30 days in a local newspaper. The lands so to be surveyed "shall be reserved, upon the filing of the application for survey, from any adverse appropriation by settlement or otherwise, except under rights that may be

found to exist of prior inception, for a period to extend from such application for survey until the expiration of sixty days from the date of filing the township plat" in the proper district Land Office.

[2] On July 8, 1901, the Governor of Idaho filed with the Surveyor General an application bearing date July 5th, for the survey of 18 townships, including township 43 north, range 4 east, and by the Surveyor General the application was sent to the Commissioner of the General Land Office, by whom it was received July 15th. It is clear, I think, that the application did not become effective for any purpose until it reached the General Land Office, and such is the holding of the Land Department. A notice bearing date July 6th was published in 6 weekly issues of a local paper; the first publication being on July 10th, and the last on August 14th. Assuming that the first effective publication was that of July 17th, two days after the receipt of the application by the Commissioner, I am inclined to the view that sufficient notice was given to meet the requirements of the law; the publication was made in every issue of the paper published during the 30-day period following the filing of the application.

As already stated, the application was for the survey of eighteen townships, or approximately 403,000 acres, and other applications of a similar character were pending. Taking cognizance of the vast area thus applied for, and of the limited right of selection remaining in the state, the Commissioner, on July 19, 1901, considered the application in question to be excessive, and declined to recognize it. No appeal having been taken by the state from his ruling, the same became final and binding, provided, of course, the Commissioner was acting within his jurisdiction. The application having been declined, no notice of its filing was given to the district Land Office, and no notation was ever made upon the township plats in that office, or upon any of its records, of the reservation or withdrawal of the land. Such was the status of the application and of the Land Office records, when, upon July 23d, the Railroad Company filed its selection lists. Later, in January, 1905, it seems that as a result of certain supplementary proceedings the General Land Office recognized the preference right of the state, but only from January 18, 1905, not from July 15, 1901, as appears from a letter of date January 20, 1905, from the Commissioner to the Register and Receiver of the district Land Office, by which the latter officers were directed to give notice of the reservation of certain townships, including 43—4, "from and after * * * January 18, 1905, and for a period extending from January 18, 1905, until the expiration of 60 days from the filing of the official plats of survey of the designated townships in your office, * * * during which time the state authorities may select any of the lands situated in said township, which are not embraced in any adverse claim."

[3] Upon the question of the power of the Commissioner to reject an application for survey, the act of 1894 is equivocal, and the rulings of the Land Department have not been entirely uniform, the later decisions, however, being in support of such jurisdiction. Northern P. R. R. Co. v. Idaho, 39 Land Dec. 583; Thorpe v. Idaho, 43 Land Dec.

168; State v. Roberson, 44 Land Dec. 448; also the decision herein involved.

The language of the act is thought to be more readily susceptible to the construction adopted in the first decision, but in practical administration such a meaning gives rise to the most serious difficulties. In that view a state with an unsatisfied grant of 1,000 acres could, by the very simple and inexpensive process of filing an application in the General Land Office and publishing a notice for 30 days, withdraw from entry the entire area of public land, however great, within the state. Is it possible that Congress contemplated or intended such a result? By the terms of the act, the application for survey must be made only "with a view to satisfying the public land grants * * * to the extent of the full quantity of land called for" by the granting acts. Is not the right, therefore, to be regarded as commensurate with the needs of the state? I am not suggesting that the amount applied for cannot in any case properly exceed the unsatisfied grant. The application must be for an entire township, whereas a smaller amount might be sufficient to satisfy the grant. But, giving consideration to the extent of the grant and the character of the lands, and the interest of the government in having its public lands disposed of and not needlessly withdrawn from entry, it is thought that the area to be surveyed must bear some reasonable relation to the area the state has the right to select. Such being the extent of the right or privilege conferred upon the state, it follows that an application for an excessive survey, being unauthorized, is ineffective, and it is for the officers of the Land Department, charged, as they are, with the sale and disposition of public lands, to determine whether in any given case the application is within the law. In any other view I am unable to see how the interest of the government can be protected. If, therefore, in fact the application under consideration was found to be excessive, the Commissioner of the General Land Office did not exceed his jurisdiction in declining to recognize it, and in refusing to take any steps to carry it into effect.

[4] It is further contended by the plaintiff that, defective though it may have been, the application served to withdraw the land from the operation of the act of 1899, reference being had to the familiar principle that the segregative effect of an entry or other selection is not necessarily dependent upon its inherent validity. Holt v. Murphy, 207 U. S. 407, 28 Sup. Ct. 212, 52 L. Ed. 271; McMichael v. Murphy, 197 U. S. 304, 25 Sup. Ct. 460, 49 L. Ed. 766; Hodges v. Colcord, 193 U. S. 192, 24 Sup. Ct. 433, 48 L. Ed. 677; Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. Ed. 761; Edith G. Halley, 40 Land Dec. 393. If, however, as is held, the Commissioner of the General Land Office had the power to reject it, the application never became operative for any purpose. To have segregative effect, an invalid application or entry must in some way be accepted or recognized by the Land Department; having been allowed, even though erroneously, it is binding upon and segregates the land. But here at the very outset there was a declination to recognize the application.

[5] If, however, we assume that the application was valid, and that the Commissioner was without power to reject it, it must be borne in mind that it constituted no offer to enter the land, but amounted only to a request to have it surveyed. The land was not entered or selected; the state made no specific claim, and it might ultimately decide not to select a single subdivision. True, the terms "reserved" and "withdrawn" are used in the act; but, when we consider its intent and purpose, clearly the only effect contemplated was to confer upon the state a preference right to select, at its option. By the filing of the application the state initiated no claim or right to any portion of the land. As has been very properly held by the Land Department, I think, the position of the state is closely analogous to that of a successful contestant after the cancellation of record of the contested entry. The land embraced in such entry is, as a result of the cancellation, fully restored to the public domain, and is no longer segregated or reserved, but the contestant possesses the preference right of entry. Accordingly, following the practice in relation to such contested entries, the department holds that the pendency of such preference right does not operate to prevent the filing of other applications, subject to such preference right. Stewart v. Peterson, 28 Land Dec. 515; Cronan v. West, 34 Land Dec. 301; Idaho v. Northern P. R. R. Co., 37 Land Dec. 70; Swanson v. Northern P. R. R. Co., 37 Land Dec. 74; Delaney v. N. P. R. R. Co. (unreported decision, Nov. 18, 1915). No good reason is apparent for holding such a practice illegal.

[6] Our attention is directed to the language of the Act of March 2, 1899, creating and defining the limits of the right of the railroad company to select, wherein it is authorized "to select [in exchange for lands relinquished by it], an equal quantity of nonmineral public lands * * * not reserved, and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection," etc. But this language does not alter the question. Neither can a citizen rightfully settle upon or enter land, unless it be public land, not reserved, and to which no private rights have attached or been initiated, etc. And yet the plaintiff asserts the right of her predecessor to settle upon and claim the land in controversy long after the state filed its application, and after the railroad company filed its selection. The right of the railroad company to select is quite as broad as the right of the citizen to "homestead." As already suggested, by its application for survey the state initiated no claim to this land; it was merely given a certain length of time to determine whether it would make such claim, and while the term "reserved" is used, plainly there is no reservation in the ordinary sense, as for some governmental purpose. The moment the preferential period in favor of the state expires, the lands may be entered by any qualified person, the same as in the case of other public lands.

In view of these considerations, it is thought that the Land Department acted upon a proper construction of the law, and accordingly the plaintiff's bill will have to be dismissed, and such will be the order.