FARRELL v. EDWARD RUTLEDGE TIMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   May 19, 1919.)

No. 3276.

1. PUBLIC LANDS ⚖︎106(1)—LIEU LANDS—LAND OFFICE FINDINGS.

A land office decision, sustaining a lieu land selection upon authority of its previous decision that unsurveyed lieu lands listed by railway companies were designated with reasonable certainty by descriptions applicable to them after they should have been surveyed, *held* not a finding of fact that lands were described with reasonable certainty.

2. PUBLIC LANDS ⚖︎82—LIEU LAND SELECTION—SUFFICIENCY OF DESCRIPTION.

Designation of railroad lieu lands by description which would apply to them after they should have been surveyed *held* not to describe them with a reasonable degree of certainty as required by Act March 2, 1899, when applied to land separated by 7½ miles of rough, mountainous, and timbered country from a known survey.

Appeal from the District Court of the United States for the North ern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by Beldon M. Delany, for whom Alra G. Farrell was substituted, against the Edward Rutledge Timber Company, and the Northern Pacific Railway Company.   Decree for defendants, and plaintiff appeals.   Reversed and remanded, with directions.

Beldon M. Delany brought a suit in the court below to have the Edward Rutledge Timber Company, a corporation, declared a trustee for him of the legal title to a quarter section of land of which he claimed to be the equitable owner by virtue of settlement and subsequent entry and final proof under the homestead laws of the United States.   The facts as found by the court below are that on July 5, 1901, the Governor of the state of Idaho applied to the Surveyor General of the state, and to the Commissioner of the General Land Office, under the Act of August 18, 1894 (28 Stat. 394, c. 301), for a survey of a township of unsurveyed lands, including the land in controversy.   On July 15, 1901, the application was filed in the office of the Commissioner of the General Land Office.   Thereafter the state complied with the requirements of the act and obtained title to some of the lands covered by its application, but not the lands involved in this suit.

On July 23, 1901, under the Act of March 2, 1899 (30 Stat. 993, c. 377), the Northern Pacific Railway Company filed its lieu selection list in the local land office at Cœur d'Alene, Idaho.   On or about May 1, 1902, W. B. Leach, a citizen of the requisite age and qualified to make homestead entry, having no knowledge of the application of the state or of the filing of the lieu selection list by the railway company, settled upon a portion of the vacant, unoccupied public domain of the United States which was afterwards by the official survey found to be the northeast quarter of section 20, township 43 north, range 4 E. B. M., and he continuously resided and made his home thereon until June 21, 1903, when he sold his claim and improvements to Delany, who was also a citizen and competent to acquire land under the homestead laws.   Delany established his home on the land, with the intention of entering the same under the homestead laws of the United States when open for entry, and he improved and cultivated the land and continuously made his home thereon until after the commencement of this suit.   On June 4, 1909, the land was surveyed and opened to settlement.

On June 10, 1909, Delany made his application to enter the quarter section on which he resided under the homestead laws, and on November 20, 1912, he offered final proof.   His homestead entry was rejected on the ground that it was in conflict with selection by the state of Idaho.   From that decision he appealed to the Commissioner of the General Land Office, and on December

16, 1909, the commissioner sustained the decision of the local land office, and ruled that the right of the state was prior, and that Delany's application was properly rejected on that ground. On June 28, 1915, the claims of the state of Idaho were canceled, and on July 9, 1915, Delany's homestead application was held for rejection on the ground that it was in conflict with the selections of the railway company. Delany appealed to the Secretary of the Interior, and on November 18, 1915, the Secretary affirmed the decision of the General Land Office on the ground that the railway company had the right to make a valid application for the land notwithstanding the claim of the state of Idaho. Patent was issued to the railway company, and the land was thereafter conveyed to Edward Rutledge Timber Company. It was shown that when Leach made his settlement on the land he blazed a line around his claim to locate his boundaries, and posted notices on each corner, and that, when he sold out to Delany, the latter took down Leach's notices and posted notices of his own. Delany did not know that an attempt had been made to appropriate the land, either by the state or by the railway company, and there was nothing on the land or in the local land office to indicate that any such claim was made, except the lieu selection list which was on file and the application of the state, which was a matter of record in the General Land Office.

On June 21, 1903, when Delany purchased the rights of Leach and made settlement on the land, the nearest surveyed line to the said land was the east line of township 43, range 2 E. B. M., 7½ miles distant from the nearest part of said land. The land between those two lines was very rough and mountainous, and the most of it covered with heavy timber. Section 4 of the Act of March 2, 1899, providing for lieu land selections, declares: "In case the tract so selected shall at the time of selection be unsurveyed, the list filed by the company at the local land office shall describe such tract in such manner as to designate the same with a reasonable degree of certainty; and within the period of three months after the lands including such tract shall have been surveyed and the plats thereof filed by said local land office, a new selection list shall be filed by said company, describing such tract according to such survey; and in case such tract, as originally selected and described in the list filed in the local land office, shall not precisely conform with the lines of the official survey, the said company shall be permitted to describe such tract anew, so as to secure such conformity." In the list which was filed the railway company described the land as follows: "The following tract which when surveyed will be described as follows: All of 20—43—4, containing 640 acres."

A. H. Kenyon, of Spokane, Wash., and S. M. Stockslager, of Washington, D. C., for appellant.

Stiles W. Burr, of St. Paul, Minn., Jno. J. Skuse and Fred B. Morrill, both of Spokane, Wash., and Horace H. Glenn, of St. Paul, Minn., for appellees.

Before GILBERT and MORROW, Circuit Judges, and DOOLING, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that the land was not described in the railway company's list so as to designate the same with a reasonable degree of certainty. The appellees contend (1) that the lands were designated with a reasonable degree of certainty, and (2) that the acceptance of the list and the issuance of patent by the Land Office involved the finding of fact that the lands were designated with a reasonable degree of certainty, and that such a finding of fact is conclusive.

[1] We find in this case no decision of fact that the description of the land as listed by the railway company designated the same with a reasonable degree of certainty. The record shows, on the contrary, that no decision was made on the facts of the case, and that the action

of the Land Office was but the application of the settled rule of practice which it followed in all cases, that all unsurveyed lands listed by a railway company as lieu lands are designated with a reasonable degree of certainty if they are designated by the description applicable to them after they shall have been surveyed. Thus on the appeal the decision of the Secretary of the Interior states, not that the rejection of Delany's application was supported by the facts, but that it was supported by the reasons given by the department in its decision in Daniels v. Northern Pac. Ry. Co., 43 Land Dec. 381. Turning to that decision, we find it stating that all lists filed for lieu lands by railway companies were accepted under general regulations of the department in every case where the lands were described in the terms of future survey, and the decision points to the Act of Congress of July 1, 1898 (30 Stat. 620, c. 546), which provided that lands under that act be selected in terms of a future survey, as sanctioning the propriety of the settled practice of the Land Department.

Conceding that the act of 1898 had the meaning attributed to it, it is to be observed that a year later, in enacting the statute under which the lieu lands were selected in the present case, Congress adopted a different provision and required, not that the lands be described in terms of future survey, but that they be designated with a reasonable degree of certainty, which, as we take it, means that Congress was not satisfied that the prior statute and prior practice were adequate in every case for the description of listed lands, but that other means of identification might become necessary in view of possible facts which would render the description in terms of future survey inadequate. In the present case, it is clear that the particular circumstances attending this lieu land selection were not taken into consideration by the Land Department. They did not decide that the description was reasonably sufficient, as applied to this particular tract of land. They applied only a rule of practice, and in so doing decided a question of law and not a question of fact.

A similar case was before us. West v. Edward Rutledge Timber Co., 221 Fed. 30, 136 C. C. A. 556, in which we sustained the court below in ruling that the railway company's designation of a list of unsurveyed land by the description by which it would be known when surveyed was legally sufficient, where the tract was within three miles of a surveyed township and could be located with approximate certainty. In that case we said:

"It may be conceded, in so far as it respects this case, that a description of a section or a quarter section by legal subdivisions in the fastnesses of the Cascades or Rocky Mountain ranges, far distant from any government survey, or even generally that a description in terms of future survey, is not such a description as is contemplated by the statute. What may be a sufficient description for designating the tract under one set of circumstances might be wholly insufficient under another."

Our decision was affirmed in West v. Rutledge Timber Co., 244 U. S. 90, 37 Sup. Ct. 587, 61 L. Ed. 1010. In that case the court said:

"What was a description having 'a reasonable degree of certainty' was to be determined by the circumstances. It was in the nature of a question of fact and had tests for decision, as the Court of Appeals pointed out."

This means that the question is in the nature of a question of fact when it is determinable according to the proper tests applicable to facts. It does not mean that the adoption and application of a general rule of practice by the Land Office is a decision of a question of fact.

[2] We are of the opinion that to designate the section of land in which the section in controversy is situated in terms of a future survey was wholly insufficient to designate the same with a reasonable degree of certainty. In the West Case, this court said:

"But the farther they remove from an established survey, it stands to reason, the greater will be the difficulty of setting foot on the identical tract, until eventually no reasonable being could expect another to tie back to a known surety for the purpose of identification."

With the uncertainty there foreshadowed we are here brought face to face. The homestead settler here could not, without the expenditure of a large sum of money, ascertain in what section his land would be when finally surveyed. The land was 7½ miles from a known survey, and the intervening space was a rough, mountainous, timbered country. Even if he had gone to the expense of a survey, he could not know that the government survey would coincide with his. By the Act of May 14, 1880, c. 89, 21 Stat. 141 (Comp. St. §§ 4536–4538), he was given the right to make his homestead upon unsurveyed lands. He duly marked the boundaries of his claim, and made his residence thereon. He selected a parcel of land in an unsurveyed township, with nothing on the ground or on record in the plats of the local land office to notify him that the tract had been selected by the railway company. Said the court in Lytle v. State of Arkansas, 9 How. 314, 333 (13 L. Ed. 153):

"The adventurous pioneer, who is found in advance of our settlements, encounters many hardships, and not infrequently dangers from savage incursions. He is generally poor, and it is fit that his enterprise should be rewarded by the privilege of purchasing the favorite spot selected by him, not to exceed one hundred and sixty acres. That this is the national feeling is shown by the course of legislation for many years."

And in Ard v. Brandon, 156 U. S. 537, 543, 15 Sup. Ct. 406, 409 (39 L. Ed. 524), the court said:

"The law deals tenderly with one who, in good faith, goes upon the public lands, with a view of making a home thereon."

The view which we have taken of this branch of the case renders it unnecessary to consider the other assignments of error.

The decree is reversed, and the cause is remanded to the court below, with instructions to enter a decree for the appellant as prayed for in the bill.