## GARDNER *v.* BONESTELL.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 143. Argued January 17, 18, 1901. — Decided February 25, 1901.

It is a well settled rule of law that the power to make and correct surveys of the public lands belongs exclusively to the political department of the Government, and that the action of that department, within the scope of its authority, is unassailable in the courts except by a direct proceeding.

The determination of the Land Department, in a case within its jurisdiction, of questions of fact depending on conflicting testimony is conclusive, and cannot be challenged by subsequent proceedings in the courts.

In proceedings in this court to review the action of state courts, this court does not enter into a consideration of questions of fact.

In 1834 Juan Reed applied to and received from the Mexican

governor of California a grant of a tract of land. In 1854 his heirs petitioned the commission created by the United States for a confirmation of that grant. It was confirmed, the order therefor being in these words:

" In this case on hearing the proofs and allegations, it is adjudged by the commission that the said claim of the petitioners is valid, and it is therefore hereby decreed that the same be confirmed.

" The land of which confirmation is hereby made is the same on which said Juan Reed resided in his lifetime; is known by the name of Corte de Madera del Presidio, is situated in Marin County and bounded as follows, to wit: Commencing from the solar which faces west at a point at the slope and foot of the hills which lie in that direction and on the edge of the forest of redwoods called Corte de Madera del Presidio, and running from thence in a northwardly direction four thousand five hundred varas to an arroyo called Holon where is another forest of redwoods called Corte de Madera de San Pablo; thence by the waters of said arroyo and the Bay of San Francisco ten thousand varas to the Point Taburon, said point serving as a mark and limit; thence running along the borders of said bay and continuing in a westerly direction along the shore of the bay formed by Point Caballos and Point Taburon, four thousand seven hundred varas to the north of the canada and the point of the 'sausal' which is near the Estero lying east of the house on said premises which was occupied by said Juan Reed in November, 1835; and thence continuing the measurement from east to west along the last line eight hundred varas to the place of beginning; containing one square league of land, be the same more or less; being the same land described in the testimonial of juridical possession on file in this case, as having been measured to said Juan Reed under a grant of the same to him, to which testimonial and the map therein referred to and constituting a part of the expediente, a traced copy of which is filed in the case, reference is to be had."

An appeal was taken therefrom to the District Court of the United States, and the following order of confirmation was made on January 14, 1856:

. " This cause came on to be heard at a stated term of the court .
on appeal from the final decision of the board of commissioners
to ascertain and settle the private land claims in the State of
California under the act of Congress approved on the 3d of
March, A. D. 1851, upon the transcript of the proceedings and
decision of the board of commissioners, and the papers and evi-
dence on which the said decision was founded, and it appearing
to the court that the said transcript has been duly filed accord-
ing to law, and counsel for the respective parties having been
heard, it is by the court hereby ordered, adjudged and decreed
that the said decision be, and the same is hereby, in all things
affirmed, and it is likewise further ordered, adjudged and de-
creed that the claim of the appellees is a good and valid claim,
and that the said claim be, and the same is hereby, confirmed
to the extent and quantity of one square league, being the same
land described in the grant and of which the possession was
proved to have been long enjoyed.  Provided, that the said
quantity of one square league now confirmed to the claimants
be contained within the boundaries called for in the said grant
and the map to which the grant refers, and if there be less than
that quantity within the said boundaries, then we confirm to
the claimants that less quantity."

No appeal was taken from this order of confirmation, and it,
therefore, became final.   In 1858 a survey was ordered by the
Land Department, and was made by a surveyor, named Mathew-
son, who surveyed one square league as being the full amount
of the tract confirmed to the petitioners.   The petitioners claimed
that their grant was of a tract described by metes and bounds
and not of a given quantity within exterior boundaries, and
after some controversy between them and the Land Department
the latter recognized their claim, set aside the Mathewson sur-
vey and ordered a new survey.   This was made in 1871.   It
was confirmed by the Land Department, and has never been
questioned therein.   Thereupon a patent was issued to the peti-
tioners, conveying the tract by metes and bounds as described
in the order of the commission and shown by the last survey.

The tract in controversy is outside the limits of both surveys.
Prior to the last survey Ebenezer Wormouth, the testator of

defendant in error, settled upon the tract in controversy, and thereafter made application to enter the tract as public land of the United States. A contest was had between such testator and one Samuel R. Throckmorton, claiming title from the heirs of Reed, the original grantee, first in the local land office, thence carried by appeal to the General Land Office, and thereafter to the Secretary of the Interior. The right to enter was sustained and a patent issued. Thereafter this action against the plaintiffs in error holding under Throckmorton was instituted in the Superior Court of the county of Marin, California, which, at first a mere action in ejectment, became by the pleadings subsequently filed a suit in equity to try title. The decree in the trial court was in favor of Wormouth, which was affirmed by the Supreme Court of the State, 125 California, 316, and thereafter this writ of error was sued out.

In the trial court the question of title was submitted to the court and findings of fact made. Among them were the following:

" 2d. That one of the questions decided by the United States register and receiver, and confirmed by the United States Commissioner of the General Land Office, and by the United States Secretary of the Interior in the said contest of *Throckmorton* v. *Wormouth*, mentioned in the twentieth paragraph of said cross complaint herein, was a question of fact, namely, the location of the western boundary of the grant made by Governor Figueroa to Juan Reed.

" 3d. That the officers of the United States Land Department, to wit, the register and receiver, the Commissioner of the General Land Office and the Secretary of the Interior, did decide and find as a fact upon the evidence produced before said register and receiver on said contest, that the land in controversy in this action was not included in the said original grant by the Mexican government to Juan Reed."

" 6th. That the officers of the United States Land Department, to wit, the United States register and receiver, the Commissioner of the General Land Office and the United States Secretary of the Interior, respectively, from the evidence produced before them in said contest of *Throckmorton* v. *Wor-*

*mouth*, in denying said application of Throckmorton, did not base their decision upon a question of law alone, but did find and decide as a fact that said Throckmorton was not a purchaser in good faith from Mexican grantees or their assigns.

" 7th. This court further finds as follows: That the rancho granted by the governor of California, under the government of Mexico, to Juan Reed, did not include within its exterior limits the land described in the deed from T. B. Deffebach *et al.* to Julius C. McCeney of February 14, 1871, or any part thereof, except so much thereof as is included in the patent issued on or about the 25th day of February, 1885, by the United States to John J. Reed *et al.* That the grant mentioned in the first paragraph of said cross complaint did not include any part of the land in controversy in this action. That no grant ever made by the Mexican government to Juan Reed or to his successors in interest included any part of the land described and granted to plaintiff by the United States patent mentioned in the twenty-second paragraph of said cross complaint.

" 8th. That the land described in said deed of T. B. Deffebach *et al.* to Julius C. McCeney, or any part thereof, except as in the last finding above set forth, was not within the exterior boundaries of said Mexican grant."

" 12th. That none of the grantees named in the deeds mentioned or referred to in the eighteenth paragraph of said cross complaint purchased the lands or interests described or mentioned in said deeds in good faith, or used or improved or possessed any part of the lands in controversy, except as trespassers upon the possession and right of the plaintiff, as alleged in his complaint in this action.

" That neither the said Throckmorton, nor his executrix, ever had any right to use or improve any part of said lot 3 in section 28, or of said lots 2 and 3 in section 29 ; that neither said Throckmorton nor his executrix was ever in the actual possession of the same or any part thereof, except as intruders and trespassers upon the rights and possession of the plaintiff.

" 13th. That the evidence introduced in the matter of the application and contest mentioned in the nineteenth paragraph of said cross complaint did not show without conflict, or show

at all, that all of the facts set forth in the preceding paragraphs of said cross complaint were true, or that any of such facts which are denied in the plaintiff's answer herein are or were true; that the evidence introduced in the matter of said application and contest did not establish all of said facts, or any material fact in favor of Throckmorton's right to purchase said land by competent or any evidence; that there was conflict in said evidence; that there was evidence on said contest which contradicted Throckmorton's evidence; that the evidence as alleged in said cross complaint was not true.

"That the register and receiver of the land office at San Francisco did not, nor did either of them, on the 9th day of February, 1886, or at any other time, base their or his decision upon the evidence as the same is alleged in said cross complaint, or upon evidence without conflict; that the said register and receiver did not, nor did either of them, rest their or his decision upon the proposition, or upon a proposition of law, that the said Throckmorton was not in law or under the law entitled to purchase the said land.

"That the Commissioner of the General Land Office, on appeal from the decision of the register and receiver, did not base his decision upon evidence without conflict, and did not rest his decision upon the or upon a proposition of law, in deciding that Throckmorton was not entitled to purchase the said land.

"That the said Secretary of the Interior did not rest his decision, affirming the decision of the Commissioner of the General Land Office, upon the or upon a proposition of law.

"That the said Secretary of the Interior decided and found as a fact from the evidence produced on said contest of *Throck-morton* v. *Wormouth*, that said Throckmorton was not a *bóna fide* purchaser from Mexican grantees or their assigns of the lands described in paragraph sixteen of said cross complaint.

"14th. That the said Throckmorton did, claiming to be a *bona fide* purchaser from Mexican grantees, make said application (to purchase) to the register and receiver of the United States land office at San Francisco, under section 7 of the act of Congress entitled, 'An act to quiet land titles in California.'

"That the said Throckmorton was not a *bona fide* purchaser

,from Mexican grantees or their assigns and was not entitled to purchase the said land or any part thereof under said act of Congress."

The opinion of the Supreme Court rested upon the single proposition that the Land Department had jurisdiction of the controversy, and that its judgment was founded upon disputed questions of fact, and, therefore was not subject to review in the courts.

*Mr. George W. Monteith* for plaintiffs in error.

*Mr. C. K. Bonestell* for defendant in error. *Mr. Alfred L. Black* was on his brief.

MR. JUSTICE BREWER, after stating the above facts, delivered the opinion of the court.

The plaintiffs in error base their right to the land in controversy upon this provision of the act of July 23, 1866, c. 219, 14 Stat. 218, 220:

" That where persons in good faith and for a valuable consideration have purchased lands of Mexican grantees or assigns, which grants have subsequently been rejected, or where the lands so purchased have been excluded from the final survey of any Mexican grant; and have used, improved and continued in the actual possession of the same as according to the lines of their original purchase, and where no valid adverse right or title (except of the United States) exists, such purchasers may purchase the same."

Every branch of the Land Department, from the register and receiver of the local land office up to the Secretary of the Interior, decided against the contention of Throckmorton, (under whom the plaintiffs in error claim,) holding that the land was not within the exterior boundaries of the grant, and that Throckmorton was not a purchaser in good faith from the grantee, or his assigns. The trial court, referring to the decision of the Land Department, found that it was not based upon any matter of law, but upon questions of fact in respect to which there was

conflicting testimony. Further, that court upon the testimony adduced before it found in accord with the conclusions of the Land Department, and the Supreme Court of the State has sustained such finding.

Certain propositions may be stated which compel an affirmance of the judgment of the Supreme Court of the State. And first, "it is a well settled rule of law that the power to make and correct surveys of the public lands belongs exclusively to the political department of the government, and that the action of that department, within the scope of its authority, is unassailable in the courts except by a direct proceeding." *Knight* v. *United States Land Association*, 142 U. S. 161, 176.

The grant was one not of quantity but by metes and bounds, and the final survey, approved by the Land Department, determined conclusively the exterior boundaries of that grant. The land in controversy was not within those boundaries. Counsel for plaintiff in error assumes that the correctness of this survey may be litigated in an action between private parties. He insists that the last survey, which he says was a mere compilation and not an actual resurvey, included a large body of lands on the one side which were not, in fact, within the boundaries of the tract of which juridical possession had been given, and excluded on the other side a large body which were within such boundaries and which included the lands in controversy. If his contentions were sustained to the full extent the result would be to enlarge the boundaries of the grant on the one side without reducing them on the other, and so increase the area of the grant several hundred acres above its admittedly true size. In other words, the United States, which obtained by the treaty of cession full title to all lands not subject to private grant, would be deprived of these extra acres, undoubtedly their property. He has mistaken his remedy. It was by application to the Land Department to correct the survey, and failing to secure correction there, a direct proceeding in the courts in which the Reed heirs should have been parties, and in which they could have been heard to defend the survey and patent.

Again, the determination of the Land Department in a case within its jurisdiction of questions of fact depending upon con-

flicting testimony is conclusive, and cannot be challenged by subsequent proceedings in the courts. *Burfenning* v. *Chicago, St. Paul &c. Railway*, 163 U. S. 321, 323, and cases cited in the opinion; *Johnson* v. *Drew*, 171 U. S. 93–99.

The Land Department found and adjudged not only that the land in controversy was outside the exterior boundaries of the grant, but also that Throckmorton was not a purchaser in good faith. Both of these findings were matters of fact and based upon the testimony. No proposition of law controlled such findings, and no error of law is apparent. Both questions of fact were determined by the Land Department adversely to the plaintiffs in error, and that determination concludes the courts. Counsel insists that there was no conflicting testimony. He ignores the survey which is in itself evidence, and that of a most persuasive kind. There are many things which a surveyor sees and finds in making a survey which are not and cannot be reproduced on paper, and which yet guide him, and wisely guide him, in the lines he runs. So that even in a case in which a survey is a proper subject of attack, it can be overthrown only upon satisfactory evidence of mistake. It cannot be ignored and the only matter considered be the tendency and significance of the oral testimony of witnesses as to lines, metes and bounds.

The trial court, in addition to its findings in reference to the proceedings in the Land Department, found, as independent matters of fact, that the land in controversy was outside the exterior boundaries of the grant, and that Throckmorton was not a *bona fide* purchaser. The Supreme Court of the State sustained those findings. Now, in proceedings in this court to review the action of state courts we do not enter into a consideration of questions of fact. We accept the determination of those courts in such matters as conclusive, and inquire simply whether there have been errors of law. *Dower* v. *Richards*, 151 U. S. 658; *Egan* v. *Hart*, 165 U. S. 188; *Hedrick* v. *Atchison, Topeka &c. Railroad Co.*, 167 U. S. 673, 677.

For these reasons the judgment of the Supreme Court of California is

*Affirmed.*