[Civ. No. 7425. Third Dist. Mar. 4, 1948.]

EUGENE D. PHELPS et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

Clewe & Deahl, Jack M. McPherson and Chas. L. Gilmore for Appellants.

Robert H. Gerdes, Thos. J. Straub and W. R. Dunn for Respondents.

PEEK, J.—The plaintiff and cross-defendants herein have appealed from a judgment in favor of the defendant and cross-complainant quieting title in the defendant to all of Section Twenty Seven (27), Township Twenty Three (23) North, Range Five (5) East, M. D. B. & M., in the county of Butte, State of California, as shown and delineated on the plat of the resurvey of said section approved

by the General Land Office of the United States on March 17, 1941, subject only to an easement for highway purposes; and decreeing that plaintiffs take nothing by their action herein.

The plaintiffs as copartners doing business under the firm name and style of Hatetna Mining and Exploration Company are the successors in interest to a certain mining claim known as the Boulder Bar Placer Mining Claim located and filed by one Louis Lammet and one David Gramps in 1898. By their complaint, amendment ·thereto, and supplemental complaint, plaintiffs sought to quiet title to the above-mentioned mining claim and to recover damages for trespass and injury to their property by the defendant. The action was dismissed insofar as it involved lands outside the boundaries of Section 27 as described in the above mentioned resurvey of that section approved in 1941.

Defendant likewise prayed that its title to Section 27 as above described be quieted as against the plaintiffs.

The controversy respecting the disputed title to the property in question arose out of the following factual situation: Section 27, together with other portions of Township 23, was officially surveyed in 1875 by one E. A. Von Schmidt. The field notes of this survey were incorporated into a plat conformable thereto and approved by the United States Surveyor General for California on November 24, 1875. By that plat Section 27 was shown to be located in the mountains to the east of the Feather River, and according to the field notes made by Von Schmidt in laying out the section on the ground, neither the western nor the northern boundaries thereof touched upon said river.

Thereafter in 1880, the United States granted and patented all of said Section 27 to the Central Pacific Railroad Company, to whom defendant is successor in interest.

In 1898, as above stated, presumably in reliance upon the survey of 1875, plaintiffs' predecessors located said mining claim on land believed to be outside and to the west of the western boundary of said Section 27 and on unsurveyed public land.

In 1936, the defendant, in connection with a contemplated power project, requested a resurvey of Section 27, and in 1938 the General Land Office ordered the same to be made, naming surveyors Wilson and Forrest to resurvey portions of Township 23, including Section 27, and to extend the official survey into the remaining unsurveyed por-

tions of said township. These surveyors proceeded, or attempted, to retrace the lines called for by Von Schmidt in his notes, but were unable to find many of the monuments or corners which Von Schmidt stated that he set. According to plaintiffs, if such monuments as wooden stakes were set they probably had been destroyed by various fires which had occurred subsequently in that vicinity.

According to the field notes and the official plat approved on March 17, 1941, Wilson and Forrest, in reestablishing the boundaries of Section 27, found the same to extend over the North Fork of the Feather River and to include substantially all of the plaintiffs' mining claim. It is to be further noted that the topography called for in the resurvey of the western and northern boundaries of said section and in particular the northwest corner thereof is entirely different from that called for in the Von Schmidt field notes.

With respect to the survey of 1875 the trial court in its findings of fact held that:

"Said survey so made by said Von Schmidt was in fact incomplete and fraudulent in that the westerly portion of the said section was not in fact surveyed, and in particular, the westerly line of said section was not surveyed or established or marked upon the ground."

In his memorandum of decision the trial court stated:

"My decision that the defendant is entitled to judgment is based solely upon the fact that the Von Schmidt survey was not in a fact a survey of the land and that therefore the Railroad Company acquired title to section 27 as later surveyed by Wilson and Forrest."

Independent research has not revealed nor has the attention of this court been directed to any case holding that an official approved survey of the United States government may be so impeached and declared fraudulent by a collateral attack thereon in an action between private parties to determine title to land. On the contrary, the cases appear to be uniform to the effect that an official survey may not be collaterally attacked as in the present case. (*Stoneroad* v. *Stoneroad*, 158 U.S. 240 [15 S.Ct. 822, 39 L.Ed. 966]; *Russell* v. *Maxwell Land Grant Co.*, 158 U.S. 253 [15 S.Ct. 827, 39 L.Ed. 971]; *Horne* v. *Smith*, 159 U.S. 40 [15 S.Ct. 988, 40 L.Ed. 68]; *Whitaker* v. *McBride*, 197 U.S. 510 [25 S.Ct. 530, 49 L.Ed. 857].)

"It is a well settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, and descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself." (*Cragin* v. *Powell,* 128 U.S. 691, 696 [9 S.Ct. 203, 32 L.Ed. 566, 567].)

 A section of a township is that which is laid out on the ground, and a patentee takes only such land as is included within the survey of the plot conveyed and he cannot later question the survey as erroneous, although in fact the line in question should have been placed elsewhere. (*Bates* v. *Illinois Cent. R. R. Co.,* 1 Black (66 U.S.) 204 [17 L.Ed. 158]; *Gardner* v. *Bonestell,* 180 U.S. 362 [21 S.Ct. 399, 45 L.Ed. 574]; *Horne* v. *Smith,* 159 U.S. 40 [15 S.Ct. 988, 40 L.Ed. 68]; *Gleason* v. *White,* 199 U.S. 54 [25 S.Ct. 782, 50 L.Ed. 87].)

"A survey of public lands does not *ascertain* boundaries; it *creates* them. *Robinson* v. *Forrest,* 29 Cal. 317, 325; *Sawyer* v. *Gray,* 205 Fed. 160, 163." (*Cox* v. *Hart,* 260 U.S. 427, 436 [43 S.Ct. 154, 67 L.Ed. 332, 337]; *Harrington* v. *Boehmer,* 134 Cal. 199 [66 P. 214, 489].)

In *Horne* v. *Smith, supra,* the court states at page 45 (40 L.Ed. 70):

"Although it was unsurveyed it does not follow that a patent for the surveyed tract adjoining carries with it the land which, perhaps, ought to have been, but which was not in fact, surveyed. The patent conveys only the land which is surveyed, and the tract surveyed terminated at a particular body of water, the patent carries no land beyond it."

 Both respondent and appellants have urged in their own favor the previously mentioned rule that an official government survey may not be collaterally attacked. However, respondent insists that by virtue of said rule plaintiffs are bound by the resurvey of 1941 which reestablished the boundaries of Section 27. Obviously such argument is not valid for it wholly disregards the fact that respondent's title is derived from a patent to land described and delineated by the Von Schmidt Survey of 1875 and not the resurvey of 1941. The present case is thus similar on its facts to *Gleason* v. *White, supra,* wherein it was held that a patentee

who took his land with reference to an original but erroneous survey could not recover from a subsequent patentee who took under a resurvey which included, as being within the section, a tract of land lying to the east of the section as originally surveyed. To hold otherwise, it was said, would allow the first patentee to profit by a mistake of the government of which he must have been cognizant.

It is unquestioned that the government may resurvey its lands for purposes of its own information or to locate adjoining boundaries, and in doing so may locate boundaries in new and different places and thus correct an erroneous survey, but it is settled, that in doing so the rights of those who have acquired an interest in lands with reference to the original survey may not be meddled with or otherwise affected. (*Kean* v. *Calumet Canal & I. Co.*, 190 U.S. 452 [23 S.Ct. 651, 47 L.Ed. 1134]; *Lane* v. *Darlington*, 249 U.S. 331 [39 S.Ct. 299, 63 L.Ed. 629]; *United States* v. *State Investment Co.*, 264 U.S. 206 [44 S.Ct. 289, 68 L.Ed. 639]; *Cragin* v. *Powell*, *supra*.

It is clear from a review of the evidence in this case that undoubtedly the Von Schmidt survey was inaccurate, but it does not follow that it was fraudulent. From an examination of the 1941 resurvey it is readily apparent that Wilson and Forrest made no effort to retrace the inaccurate western lines set by Von Schmidt, but proceeded to make a *corrective* survey rather than to again mark upon the ground the lines of Section 27 as surveyed in 1875. Particularly there is evidence in the record that in reestablishing the southwest corner of Section 27, Wilson and Forrest disregarded the call of Von Schmidt that such corner was on a true north line from the southwest corner of Section 34 common to Section 33, which they found and which if they had followed would have placed the west line of Section 27 at approximately the position shown by the plat of 1875 with respect to the Feather River. Also there is evidence that in resurveying Section 27 they retraced the Von Schmidt lines solely with respect to courses, distances and quantity, disregarding calls and monuments, natural and artificial. In doing so the survey was obviously intended and shown to be corrective, rather than an attempt to locate on the ground the parcel of land patented to the respondent.

It is a well-established rule of law that quantity is the least reliable of all descriptions, and course and distance must yield to calls for monuments, natural and artificial.

(*Ayers* v. *Watson,* 113 U.S. 594 [5 S.Ct. 641, 28 L.Ed. 1093] ;
*Spreckles* v. *Brown,* 212 U.S. 208 [29 S.Ct. 256, 53 L.Ed. 476] ;
*Horne* v. *Smith, supra; United States* v. *State Investment Co.,
supra.*)

Respondent also asserts that appellants by failing to appeal
from the order of the Land Department dismissing their pro-
test to the survey of Wilson and Forrest, abandoned such
protest and likewise thereby failed to exhaust their adminis-
trative remedies and consequently they are now precluded
from attacking said survey. However, the point is immaterial
here for the reason that appellants are neither attacking the
resurvey nor the right of the government to make it.

As above stated, the right of the government to resurvey
its lands and make corrections of former surveys is unques-
tioned. The present issue is one of title solely as between
plaintiffs and defendant, and the conclusion herein reached
is entirely consistent with a concession that Wilson and For-
rest in their corrective survey placed the west line of Section
27 where it should have been placed by Von Schmidt but in
fact was not.

The respondent further contends in support of the judg-
ment that its predecessor in interest having been granted
Section 27 of Township 23, it took whatever might later be
found to be included within that section by a survey, and that
land may be so granted by township and section which at the
time of the grant was unsurveyed public land. Reliance is
placed upon numerous cases including *Payne* v. *Central Pac.
Ry. Co.,* 255 U.S. 228 [41 S.Ct. 314, 65 L.Ed 598] ; *Wisconsin
C. R. R. Co.* v. *Price County,* 133 U.S. 496 [10 S.Ct. 341, 33
L.Ed. 687] ; *United States* v. *Northern Pac. R. R. Co.,* 256
U.S. 51 [41 S.Ct. 439, 65 L.Ed. 825] ; *West* v. *Edward
Rutledge T. Co.,* 244 U.S. 90 [37 S.Ct. 587, 61 L.Ed. 1010] ;
*Edward Rutledge Timber Co.* v. *Farrell,* 255 U.S. 268 [41
S. Ct. 328, 65 L.Ed. 623]. Such cases, however, are not in
point. In the first place respondent's argument assumes that
the section in question was not surveyed at the time of the
original grant to the railroad company, and secondly, the
factual situation here is entirely dissimilar to cases wherein
the land in question had never been surveyed, either correctly
or incorrectly at the time of the grant and the grantee con-
tracted to take a particular section, the extent of which was to
be later ascertained by a survey. In the present case the
property granted and patented to the railroad had been sur-

veyed prior thereto and the patent designated land with reference to the survey and the approved plat of 1875. The railroad did not take unsurveyed land by section and township. It took a particular parcel of land with reference to an approved survey of the United States government.

The conclusion is inescapable that the boundaries of section 27, insofar as the title of the respective parties to the land in controversy is concerned, were established by the survey and approved plat of 1875, and the conclusion of the trial court that the survey of Von Schmidt was fraudulent cannot be supported.

The judgment is reversed.

Thompson, J., and Adams, P. J., concurred.

A petition for a rehearing was denied April 2, 1948, and respondents' petition for a hearing by the Supreme Court was denied April 29, 1948.