[Civ. No. 2973. Fifth Dist. June 21, 1977.]

HELENE A. CASAD, Plaintiff, Cross-defendant and Appellant, v. OTIS W. QUALLS et al., Defendants, Cross-complainants and Respondents.

COUNSEL

Eugene Schneider for Plaintiff, Cross-defendant and Appellant.

Hawes & Brown and Edward L. Hawes for Defendants, Cross-complainants and Respondents.

OPINION

**BROWN (G. A.), P. J.**—This action involves a dispute regarding the ownership of certain real property in the rural area of Fresno County. The trial court decided that title is in the defendants and cross-complainants, Otis W. Qualls and Stella M. Qualls (hereinafter Qualls), predicated solely upon the res judicata effect of a judgment entered between the predecessors in interest of plaintiff and cross-defendant Helene A. Casad (hereinafter Casad) and of Qualls. The sole issue on appeal is whether the trial court erred in holding the prior judgment to have conclusive effect on the issues herein.

For ready illustrative reference in following this opinion, the property in dispute is delineated on the simplified diagram in the attached appendix.

The range line established by the United States Government surveys of 1881 and 1919, which are identical, formed a common boundary between Township 10 South, Range 22 East, Mount Diablo Base and Meridian, and Township 10 South, Range 23 East, Mount Diablo Base and Meridian,[1] that line being the western boundary of 10-23 and the eastern boundary of 10-22. The land that was patented to Qualls' predecessor in 1923 consisted, among other properties, of lot 4, 10-23. The patent was based upon the 1881 plat of 10-23. This plat has never been changed, modified or its boundaries adjusted in any way since 1881.

The land that was patented to Casad's predecessor in 1929 consisted, among other properties, of lots 1 and 2 of 10-22 and was based upon the 1919 plat of 10-22.

[1]For brevity these township references will hereinafter be in the form of 10-22 and 10-23.

Thus, the predecessors in interest of Casad and Qualls were adjoining landowners with a common boundary consisting of the 1881/1919 range line.

In 1935 the United States Government commissioned a resurvey of a portion of 10-22, which resurvey resulted in a new eastern boundary for 10-22, moving the line considerably west of the 1881/1919 placement of the eastern boundary. It is this 1935 resurvey that has given rise to the dispute herein.

The prior adjudication upon which Qualls and the trial court relied as being res judicata upon the issues herein was the result of a lawsuit between Qualls' predecessor, Iturbury, commenced against Casad's predecessors, Jamisons, in 1937, to quiet title and for other incidental relief as to a number of parcels of real property in the area, including "Lot 4 in Section 6, Township 10 South, Range 23 East, Mount Diablo Base and Meridian,[2] . . . [a]ll according to Government Township Plats." The complaint also involved a parcel of real property not in issue herein, located in 10-22, lying south of Jamisons' property.[3]

Judgment was rendered in Iturbury's favor in that action in 1938 and became final without modification. The description contained in the judgment followed the allegations of the complaint except that the judgment added immediately after the words "All according to Government Township Plats" the following: "including the United States Government Survey of Township 10 South, Range 22 East, Mount Diablo Base and Meridian, being a revision of survey and resurvey of Sections 1, 2, 3, East half of 4, 8, 9 and 17, with tract segregations, approved by the Department of the Interior, General Land Office, April 18, 1935, and on file in the General Land Office at Washington, D. C., a copy of which map is on file in the office of the County Surveyor, Fresno County, California, in Book of Government Township Plats."

In the case at bench, Casad sued Qualls to quiet title and for other incidental relief as to lots 1 and 2 (and certain other property) in 10-22. Qualls cross-complained to quiet title to lot 4, section 6 in 10-23, contending that the 1935 resurvey of the eastern boundary of 10-22 moved the western boundary of 10-23 westward so as to include the

---

[2]Hereinafter referred to as Iturbury or Iturbury action.

[3]That parcel was described as: "The East half of the Southeast quarter of the Northeast quarter of Section 1, Township 10 South, Range 22 East, Mount Diablo Base and Meridian. . . ."

property that was formerly lot 1 and part of lot 2 in 10-22 as part of Lot 4 in 10-23, and that the Iturbury judgment was res judicata on this issue. The trial court agreed, finding that "The real property in dispute in this action is the same as the real property which was in dispute in [the Iturbury action]," and further found that "[a]s between the parties, the Western boundary of Defendants and Cross-Complainant's property in Section 6, Township 10 South, Range 23 East, Mount Diablo Base and Meridian, is the same line as the line drawn in the 1935 U.S. Government Survey setting the Eastern boundary of Section 1, Township 10 South, Range 22 East, Mount Diablo Base and Meridian." The court thereupon concluded that the judgment in the Iturbury action conclusively determined Qualls' predecessor was, and therefore Qualls is, the owner of the disputed property. Casad appealed from the judgment entered in favor of Qualls.

In the case at bench there is no dispute that the Iturbury judgment was a final judgment on the merits involving Casad's and Qualls' predecessors in interest as adversaries. The conclusive effect of the Iturbury judgment in the present appeal, therefore, depends upon the third element essential to the application of the doctrine of res judicata, which is whether there was an identity of issues with the present action. (Code Civ. Proc., § 1908; *Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804]; *Standard Oil Co.* v. *J. P. Mills Organization* (1935) 3 Cal.2d 128, 139 [43 P.2d 797].) ▪ It is, of course, settled that if the requirements are otherwise present the former judgment operates in favor of or against privies of the original parties, even though erroneous, where the court had jurisdiction of the subject matter and the parties. (*Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 725 [285 P.2d 636]; *Curtis* v. *Upton* (1917) 175 Cal. 322, 331 [165 P. 935].)

Our chore here, therefore, is not to determine whether the prior judgment was erroneous but to determine if the trial judge's interpretation of the judgment in the Iturbury action was correct. ▪ Narrowly stated, the question is, did the trial judge herein err in holding that the Iturbury judgment not only shifted the eastern boundary of 10-22 westerly to the 1935 range line from its former location but also established a new western boundary for 10-23?

We begin our discussion with the observation that in interpreting the Iturbury judgment the court below had before it only the complaint and judgment in that action. There was no reporter's transcript, memorandum of decision or other information or extrinsic evidence to aid in the

interpretation of the former judgment. Under these circumstances the appellate function in the construction of a written instrument is well defined. ■ As was stated in *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]: "[I]t is 'a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument; it is only when the issue turns upon the credibility of extrinsic evidence, or requires resolution of a conflict in that evidence, that the trial court determination is binding. [Citation.]" (Fn. omitted.) The statement pertains to written instruments without restriction as to whether the writing under consideration is a will, contract or judgment. Pursuant to this principle, therefore, it becomes our task to arrive at an independent interpretation of the former judgment. We start by a short review of the legal principles applicable to the burden of proof and interpretation of the res judicata effect of judgments.

■ The burden of proof is on the party asserting the defense of res judicata. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 198, p. 3337.) In carrying this burden of proof the party may resort to the judgment, the record of the entire proceedings, and extrinsic evidence. (4 Witkin, Cal. Procedure, Judgment, *supra,* § 41, p. 3209, §§ 198-200, pp. 3336-3339; *Newport* v. *Hatton* (1924) 195 Cal. 132, 156 [231 P. 987]; *Goatman* v. *Fuller* (1923) 191 Cal. 245, 251 [216 P. 35]; *De Sepulveda* v. *Baugh* (1887) 74 Cal. 468 [16 P. 223].)

Code of Civil Procedure section 1911 states "[t]hat only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." Similarly, it is stated in 29 California Jurisprudence Second, Judgments, section 239, at pages 200-201, "In view of the certainty required in estoppels, the application of the doctrine of res judicata cannot be made by inference or surmise as to the effect of the judgment. If, on the face of the record, anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when it is pleaded, and nothing conclusive in it when it is offered in evidence." (Citing *Emerson* v. *Yosemite Gold Min. etc. Co.* (1906) 149 Cal. 50, 57 [85 P. 122] (affd. 208 U.S. 25 [52 L.Ed. 374, 28 S.Ct. 196]); *Beronio* v. *Ventura Co. Lumber Co.* (1900) 129 Cal. 232, 236 [61 P. 958]; *Barber* v. *Mulford* (1897) 117 Cal. 356, 360 [49 P. 206]; *Richardson* v.

*City of Eureka* (1895) 110 Cal. 441, 445 [42 P. 965].) (See also 4 Witkin, Cal. Procedure, Judgment, *supra,* § 40, pp. 3208-3209.)

Specifically with regard to land, the court in *People* v. *Rio Nido Co., Inc.* (1938) 29 Cal.App.2d 486, 489 [85 P.2d 461], stated that "Undoubtedly a judgment purporting to adjudicate the title to real property must be as clear and explicit as a deed which purports to convey real property."

■ Applying these principles to the facts herein, we have concluded that the trial judge erred in deciding that the Iturbury judgment moved the western boundary of 10-23 to coincide with the eastern boundary of 10-22 as established by the range line of 1935.

The apparent basis for the trial judge's conclusion lies in the inclusion in the Iturbury judgment after a description of the properties involved of · the language: "All according to Government Township Plats, including the United States Government Survey of Township 10 South, Range 22 East, Mount Diablo Base and Meridian, being a revision of survey and resurvey of Sections 1, 2, 3, East half of 4, 8, 9 and 17, with tract segregations, approved by the Department of the Interior, General Land Office, April 18, 1935, and on file in the General Land Office at Washington, D.C., a copy of which map is on file in the office of the County Surveyor, Fresno County, California, in Book of Government Township Plats."

However, the most that can be said about this language is that it created an ambiguity on the face of the record. This is true because the judgment itself refers to "All according to Government Township Plats" and the word "including" means that the 1935 plat of 10-22 is only one of the plats to be considered. The use of the plural must·necessarily refer to the 1881 and 1919 plats as well. Moreover, the complaint in the Iturbury action does not seek to quiet title to lot 1 or 2 of 10-22 but only to lot 4 of 10-23. There is nothing whatsoever to indicate that the court considered the western boundary of 10-23. The most logical explanation of its inclusion of the reference to the 1935 range line in the above quotation establishing the eastern boundary of 10-22 was for the purpose of certainty in establishing the 10-22 boundary with regard to the parcel of property contained in the Iturbury complaint but not at issue herein, located to the south of lots 1 and 2 of 10-22. (See fn. 3, *ante.*)

Furthermore, the 1935 survey was not and did not purport to be a resurvey of 10-23 but only of 10-22. The fact the eastern boundary of 10-22 was relocated by the 1935 survey does not mean the westerly line of 10-23 moved to the same location and, as has been pointed out, there is no extrinsic evidence in the record that the judge in the Iturbury case sought to establish a new westerly boundary of 10-23 which happened to be coincident with the 1935 survey line.

In the face of such ambiguity, "A judgment 'must be construed with reference to the law regulating the rights of the parties.' [Citation.] . . . 'In case of doubt regarding the signification of a judgment, or any part thereof, the whole record may be examined for the purpose of removing the doubt.' (1 Freeman on Judgments, sec. 45.) 'When it admits of two constructions, that one will be adopted that is consonant with the judgment that should have been rendered on the facts and the law of the case.' (1 Black on Judgments, secs. 3, 123; *Peniston* v. *Sommers,* 15 La.Ann. 680.)" (*Watson* v. *Lawson* (1913) 166 Cal. 235, 241 [135 P. 961].)

For the court to have rendered a judgment which changed the reference line to the 1935 range line would have been counter to the law existing then and now. Where " ' ". . . lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, and descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written upon the face of the deed or the grant itself.". . .' " (*Larson* v. *Larson* (1949) 89 Cal.App.2d 846, 848 [202 P.2d 121], quoting from *Phelps* v. *Pacific Gas & Elec. Co.* (1948) 84 Cal.App.2d 243 [190 P.2d 209], which in turn was quoting from *Cragin* v. *Powell* (1888) 128 U.S. 691, 696 [32 L.Ed. 566, 567-568, 9 S.Ct. 203].) Thus, a resurvey of patented land has no effect upon the grant of the patented land. Patented land is described in terms of the last government survey prior to the time at which the government conveyed the land to a private party. (*United States* v. *State Inv. Co.* (1924) 264 U.S. 206, 212 [68 L.Ed. 639, 642-643, 44 S.Ct. 289]; *Churchill Co.* v. *Beal* (1929) 99 Cal.App. 482, 487-490 [278 P. 894]; 2 Cal.Jur.3d, Adjoining Landowners, § 80, pp. 126-127.)

The lands in question in the case under review were all patented pursuant to the surveys of 1881 and 1919 which established a common boundary range line between 10-22 and 10-23. The 1935 survey, then, had no effect upon the descriptions of the prior patented land. Therefore, it would have been counter to the existing law for the Iturbury court to

have moved the boundary line from its 1881/1919 position to its 1935 resurvey position and thus the ambiguity raised by his mention of the 1935 survey position must be resolved against a finding that he intended the judgment to change the boundary line.

Accordingly, we believe the conclusion is inescapable on the basis of the record before us that Qualls did not satisfy their burden of proof that the Iturbury judgment clearly and explicitly established with certainty that the western boundary of lot 4, 10-23 was coincident with the 1935 range line establishing the eastern boundary of 10-22.

The judgment is reversed.

Gargano, J., and Franson, J., concurred.

---

### APPENDIX

Sec. 36, Twp. 9 S., R. 22 E., M.D.B.& M.

Sec. 31, Twp. 9 S., R. 23 E., M.D.B.& M.

LOT 2 LOT 1 LOT 4

Sec. 1. Twp. 10 S., R. 22 E., M.D.B.& M.

JAMISON

CASAD

Sec. 6, Twp. 10 S., R. 23 E., M.D.B.& M.

ITURBURY

QUALLS

1935 RANGE LINE

1881/ 1919 RANGE LINE

Legend: Property in dispute is in shaded area.