[No. C046733. Third Dist. Sept. 7, 2005.]

RICHARD D. FRIPP II et al., Plaintiffs, Cross-Defendants and Respondents,
v.
JEAN E. WALTERS, Defendant, Cross-Complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] The Reporter of Decisions is directed to publish the opinion except for Part II of the Discussion.

**COUNSEL**

Michael R. Barrette for Defendant, Cross-Complainant and Appellant.

Sheldon & Mankin and Robert E. Sheldon for Plaintiffs, Cross-Defendants and Respondents.

OPINION

BLEASE, Acting P. J.—This is a boundary dispute between neighbors Richard D. and Helen Fripp and Jean E. Walters. The Fripps were the prevailing parties below.

The disputed boundary lies along the southern boundary of the Fripps' property and the northern boundary of Walters's property. The boundary was originally created in 1923 when the Fripps' predecessor in interest deeded a portion of a larger parcel to Walters's predecessor in interest. In 1969, Walters's predecessor in interest subdivided the southern property by a recorded parcel map. The parcel map was based upon a survey conducted by a civil engineer, which failed to follow the boundary description in the 1923 grant deed.

The trial court found the parcel map failed to follow the actual boundary line between the Fripp and Walters properties as set forth in the 1923 grant deed. As a result, the parcel map conveyed to Walters more property than the creator of the parcel map owned.

On appeal Walters claims the 1969 recorded parcel map was a "government sanctioned survey," which precludes a showing the boundaries established by the parcel map are erroneous. We disagree.

■ We shall affirm the judgment on the ground the boundaries shown on the parcel map are not the product of a government survey and can be challenged for failure to follow the boundary lines of the parcel from which the smaller parcels were derived.

## FACTUAL AND PROCEDURAL BACKGROUND

The properties at issue were once a part of a larger 160-acre parcel owned by Ida Dempsey and her daughters, Marguerite Dempsey and Ruth Haddick. The parcel comprised the southeast quarter of Section 13, Township 23 North, Range 11 East, M.D.M., in Plumas County (Section 13). In 1923, the Dempseys and Haddick deeded a 39-acre parcel to H.H. Stoddard. The description of the deeded property was as follows: "Beginning at the Section Corner common to Sections 13 and 24 Tp. 23 N. R. 11 E. M.D.M. and Sections 18 and 19 Tp. 23 N. R. 12 E.M. D. M. and running thence North along the Section line 780 feet; *thence West 830 feet; thence S. 48 degrees 39' W. 333 feet; thence West 1560 feet*; thence South 560 feet to the 1/4 Section corner between Sections 13 and 24 Tp. 23 N. R. 11 E.M.D.M.; thence East 2640 feet to the place of beginning; containing 39.00 acres more or less . . . ."

The deed created the boundary between the properties now owned by the Fripps and Walters. The italicized portion describes the disputed boundary.

a. *History of Fripp Parcel*

Shortly after the 39-acre parcel was deeded to H.H. Stoddard, Ida and Marguerite Dempsey deeded their interest in the remainder of the quarter section to Haddick. Both deeds describe the conveyed property as the 160 acres comprising the southeast quarter of Section 13, excepting therefrom the property conveyed to Stoddard by deed dated February 26, 1923. In 1994, the Fripps purchased the property from Haddick's estate.

b. *History of Walters Parcel*

The Walters parcel is a part of the property conveyed to Stoddard in 1923. As of 1946, the 39-acre parcel to the south was owned by Tarter, Webster & Johnson, Inc., who sold it to Gilbert and Marian Luman in July 1946. The description of the boundaries in the Luman deed was identical to the description contained in the deed from Dempsey/Haddick to Stoddard. However, the deed excepted "that certain right of way and water rights granted by Ida M. Dempsey et al to H.[H.] Stoddard by deed dated February 26, 1923 . . . ." The pertinent portion of the 39-acre southern parcel was eventually deeded to William and Ann Sherrard in 1962.

In the mid-1960's, the California Department of Highways rerouted Highway 70, and small portions of both the Haddick and Sherrard Properties were deeded to the state. On June 6, 1969, the Sherrards divided a portion of their property into four parcels by recording a parcel map. The parcel map was prepared by John Simpson, a civil engineer, and was examined by the Plumas County Surveyor for conformity with Business and Professions Code section 11575, one of the parcel map provisions of the Subdivision Map Act of 1965. (Stats. 1965, ch. 1180, § 13, p. 2985; see fn. 2, *post.*) On June 24, 1969, the Sherrards sold the northernmost parcel to Walters. The deed to Walters describes the property sold to her as follows: "All that portion of the SE1/4 of SE1/4 of section 13, Township 23 North, Range 11 East, M.D.M. shown as Parcel 1 on the map filed June 6th 1969 in the Plumas County Recorder's office and of record in Book 2 Parcel Maps, page 80."

As noted, the 1969 parcel map referred to was prepared by a civil engineer.

c. *Errors in Parcel Map*

In April 2000, the Fripps hired Gerald Tibbedeaux, a land surveyor, to survey their property. Tibbedeaux found numerous errors in the 1969 parcel

map including a discrepancy between the boundary line described in the 1923 deed and the disputed boundary line described on the parcel map. A portion of the record of survey performed by Tibbedeaux showing the disputed boundary is attached to the opinion as an exhibit. He found the civil engineer who prepared the parcel map, John Simpson, failed to recover the monuments necessary to establish the location of the boundary as described in the 1923 deed.

The 1923 deed described the disputed boundary as running west from the east section line. However, the northern boundary of the parcel map was neither parallel to the southern boundary, nor perpendicular to the east section line. Tibbedeaux testified the only line that would satisfy the definition of "west" as given in the 1923 deed was a line parallel to the southern boundary of the parcel.

Tibbedeaux also found that three of the points Simpson used to establish the north boundary for the parcel map (two steel pins and an iron pipe) were not tagged to show they were placed by a registered surveyor or civil engineer, nor was there any record to determine when or who may have placed them. Tibbedeaux concluded that because there was no record to establish the origin of the pipe and steel pins, and because those points were different than would have been established from the 1923 deed, the points were placed by someone who had no idea of the record lines as established by the 1923 deed.

The trial court found that the discrepancies between the 1969 parcel map and Tibbedeaux's survey "were the result of applying different and inconsistent surveying principles to the same deed description." The court found the parcel map failed to accurately reflect the boundary, and Tibbedeaux's survey was the correct interpretation of the 1923 deed description. Another issue at trial was Walters's claim of a 20 foot right of way and water rights over the Fripps' property. As to Walters's right-of-way and water rights claim, the trial court found that whatever right-of-way and water rights were conveyed in the 1923 deed to Stoddard were excepted from the 1946 deed from Carter, Webster & Johnson, Inc. to the Lumans.

## DISCUSSION

### I

### Boundary

Walters's sole argument is that the 1969 parcel map constituted a "government sanctioned survey," which precludes evidence of a resurvey that shows the original government sanctioned survey was incorrect.

Walters does not appear to have made this argument below, but raises it for the first time on appeal. However, we will address the purely legal issue whether a parcel map requires a government survey that cannot be proven incorrect.

■ An official approved survey of the United States government may not be impeached by collateral attack in an action between private parties to determine title to land. (*Phelps v. Pacific Gas & Electric Co.* (1948) 84 Cal.App.2d 243, 246 [190 P.2d 209].) Walters claims this rule applies here. We disagree. Her argument would require this court to expand the rule to include any government sanctioned survey, and to agree that a parcel map is a government sanctioned survey because the Subdivision Map Act requires that parcel maps be reviewed by the county surveyor for accuracy and approved by a legislative body. We shall conclude that neither case law nor statute justifies such an extension of the rule.

The first California case to set forth the rule of law on which Walters relies was *Chapman v. Polack* (1886) 70 Cal. 487 [11 P. 764]. In that case the defendant Polack owned the northeast quarter section and plaintiff Chapman owned the southeast quarter section. (*Id.* at p. 488.) Defendant was in possession of a hotel, and claimed it was on the northeast quarter, while plaintiff claimed the hotel was on the southeast quarter. (*Id.* at pp. 488–489.) At trial, there was testimony that a line drawn midway between the north and south boundaries of the section would run north of the hotel. (*Id.* at p. 489.)

Defendant Polack claimed the land pursuant to a patent issued by the State of California. (*Chapman v. Polack, supra*, 70 Cal. at p. 490.) The land was listed to the state after the official United States government survey map was filed in the proper United States land office. (*Ibid.*) On the official plat of the approved survey, the hotel building was platted and located in the northeast quarter. (*Ibid.*) The court held that because the official plat of the government of the United States showed the hotel to be north of the line separating the northeast and southeast quarter sections, such line, even if inaccurate, was deemed to be the true division line and no parol evidence or evidence of a later private survey was admissible to show the line should have been elsewhere. (*Id.* at pp. 495–496.)

This court later reached a similar result in *Phelps v. Pacific Gas & Electric Co.* In that case, Pacific Gas & Electric Co. was the successor in interest to the Central Pacific Railroad Company. (*Phelps v. Pacific Gas & Electric Co., supra*, 84 Cal.App.2d at p. 245.) The railroad company obtained "Section 27" by patent from the United States in 1880. (*Ibid.*) Section 27 had been officially surveyed in 1875. (*Ibid.*) The notes of the survey were incorporated into a plat and approved by the United States Surveyor General for California. (*Ibid.*)

Phelps's predecessor in interest located a mining claim on property west of Section 27 and on unsurveyed public land. (*Phelps v. Pacific Gas & Electric Co., supra,* 84 Cal.App.2d at p. 245.) Years later, Pacific Gas & Electric Co. resurveyed the land. The later survey established that the original survey was erroneous, and that Phelps's land was in fact located within Section 27. (*Id.* at pp. 245–246.)

This court reversed the trial court judgment in favor of Pacific Gas & Electric Co., holding that an official approved survey of the United States government could not be impeached by a collateral attack in an action between private parties to determine title to the land. (*Phelps v. Pacific Gas & Electric Co., supra,* 84 Cal.App.2d at p. 246.) The court stated, "[a] section of a township is that which is laid out on the ground, and a patentee takes only such land as is included within the survey of the plot conveyed and he cannot later question the survey as erroneous, although in fact the line in question should have been placed elsewhere." (*Id.* at p. 247.) The court reasoned that the boundaries of an official survey cannot be questioned because such a survey does not ascertain boundaries, but creates them. (*Ibid.*) The court also noted that while the government may resurvey its land for its own information and correct an erroneous survey, it may not affect the rights of those who have acquired an interest in lands with reference to the original survey. (*Id.* at p. 248.)

■ Likewise in *Casad v. Qualls* (1977) 70 Cal.App.3d 921 [139 Cal.Rptr. 243], where the United States government resurveyed land patented to private parties after the original government survey, and the resurvey differed from the original survey, the correct boundary was that set forth in the original survey. The court stated, "a resurvey of patented land has no effect upon the grant of the patented land. Patented land is described in terms of the last government survey prior to the time at which the government conveyed the land to a private party." (*Id.* at p. 929.)

■ None of these cases holds that a parcel map is the type of government survey impervious to later attack. Instead, they stand for the rule that where the government sells public land to a private party pursuant to an original United States government survey, the survey cannot later be shown to be erroneous.

The other cases cited by Walters do not support her claim that the parcel map is a government survey for purposes of the rule stated. In *County of Trinity v. County of Mendocino* (1907) 151 Cal. 279 [90 P. 685], the rule regarding original government surveys was not part of the court's holding. In that case, state law declared the fortieth parallel of north latitude would be the dividing line between Trinity and Mendocino counties. State law also called

for the appointment of a surveyor to mark the fortieth parallel, and declared that the lines marked by the surveyor were to be the true boundaries of the counties. (*Id.* at p. 282.) A later survey showed the prior survey was off by approximately two miles. (*Id.* at p. 283.) The issue on appeal was whether the Legislature had the authority to declare the line to be the true boundary in advance of the survey. (*Id.* at p. 286.) The court determined the Legislature did have such authority.

In *Beall v. Weir* (1909) 11 Cal.App. 364 [105 P. 133], a landowner surveyed a section line on his property, fixed the location of the section line by monuments, then conveyed 30 feet on either side of the line to the county for a roadway. (*Id.* at pp. 366–367.) A resurvey showed the original monuments were incorrect. (*Id.* at p. 368.) The court found the original survey lines to be the true lines, not because it was a government survey that could not be impeached, but because a conveyance made with reference to stakes and monuments, which were fixed and in place at the time of the conveyance, cannot be defeated later by a new survey showing the stakes and monuments were not in their true places. (*Id.* at p. 368.)

Our conclusion is confirmed by an out-of-state case cited by Walters, *Titus v. Chapman* (2004) 2004 SD 106 [687 N.W.2d 918]. "Government surveys, not surveys conducted by private individuals, create, rather than merely identify, boundaries. *Cox v. Hart,* 260 U.S. 427, 436 [67 L.Ed. 332, 337, 43 S.Ct. 154, 157] (1922). The term 'original survey' refers to the official government survey performed under the laws of the federal government by its official agency. *See Id.; Block v. Howell,* 346 N.W.2d 441, 444–45 (S.D. 1984); Walter G. Robillard & Lane J. Bouman, Clark on Surveying and Boundaries § 4.12 (5th ed. 1976). [¶] A subsequent survey by a private individual or non-government entity is more accurately described as a retracing or resurvey. [Citations.] In a retracing or resurvey, a surveyor must 'take care to observe and follow the boundaries and monuments as run and marked by the original survey.' [Citation.] Boundaries as established by original government surveys are unchangeable and must control disputes. [Citation.]" (687 N.W.2d at p. 924.)

The other out-of-state cases Walters cites do not aid her argument. They are grounded either on a theory of boundary by acquiescence (*Diehl v. Zanger* (1878) 39 Mich. 601), or the rule that monuments control over courses and distances. (*Sellman v. Schaaf* (1971) 26 OhioApp.2d 35 [269 N.E.2d 60]; *Buckley v. Laird* (1972) 158 Mont. 483 [493 P.2d 1070].)

When the parcel map at issue was filed in 1969, Business and Professions Code section 11503.1 provided that a parcel map was a map showing the

division of land into four or fewer parcels. (Stats. 1965, ch. 1180, §§ 1, 7, pp. 2980–2981.)[2] At that time, the Subdivision Map Act differentiated between divisions of land into four or fewer parcels, and divisions of land into five or more parcels. (Stats. 1965, ch. 1180, §§ 1, 7, pp. 2980–2981.) A subdivision referred to "any real property . . . which is divided for the purpose of sale, lease, or financing . . . by any subdivider into five or more parcels . . . ." (Stats. 1965, ch. 1180, § 7, p. 2981.) A "subdivider" was a "person, firm, corporation, partnership or association who causes land to be divided into a subdivision for himself or for others." (Stats. 1943, ch. 128, § 1, p. 866.)

From this statutory context, we infer that in 1965 a parcel map was a map showing the division of land by a person, firm, corporation, partnership, or association, for the purpose of sale, lease, or financing. Such a map does not involve a government survey within the meaning of the case law. It requires (then as now) only that the map be compiled from sufficient data or a survey to accurately establish the boundaries of the parcel. (See fn. 2, *ante.*) The boundaries are subject to challenge in an appropriate case.

■  The parcel map in this case was not created to convey public lands to private parties. Instead, the conveyance was from one private party to another. While the parcel map may have created boundaries within the parcel to be subdivided, it did not create the boundary between the parcel map and the property bordering it. The 1969 parcel map should have followed the boundary described in the 1923 deed, but it did not. Since the erroneous

---

[2] Business and Professions Code, section 11576, subdivision (b) of the 1965 law provided: "In any case where the division of land creates four or less parcels, the parcel map may be compiled from record data available when sufficient survey information exists on filed maps and when the location of any boundary of the parcel map, either by monuments or possessory lines, is certain. The parcel map shall be submitted to the county surveyor or city engineer for his examination prior to filing." (Stats. 1965, ch. 1180, § 13, p. 2985.)

Business and Professions Code, section 11611 of the 1965 law provided that the governing body of the entity within which the parcel occurred shall approve the map if it conforms to the requirements of the parcel map law, subject to conditions such as the dedication of streets and easements. (Stats. 1965, ch. 1180, § 15, p. 2987.)

The 1965 law (Bus. & Prof. Code, § 11629) also provided for the correction of any "error in any course or distance shown thereon" the parcel map. (Stats. 1965, ch. 1180, § 19, p. 2988.)

The current law provides in general that "[i]f a parcel is to be divided into four or fewer lots, the division is a 'subdivision' within the Map Act but the owner is only required to file a parcel map in order to obtain approval for the subdivision." (9 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 25:160, p. 405; see Gov. Code, §§ 66424, 66426, 66428.) The parcel map "shall be based upon a field survey made in conformity with the Land Surveyors Act when required by local ordinance, or, in absence of such requirement, shall be based either upon a field survey made in conformity with the Land Surveyors Act or be compiled from recorded or filed data when sufficient survey information exists on filed maps to locate and retrace the exterior boundary lines of the parcel map if the location of at least one of these boundary lines can be established from an existing monumented line." (Gov. Code, § 66448.) "The procedure for the filing, approval . . . and modification of parcel maps is provided by . . . local ordinance." (9 Miller & Starr, Cal. Real Estate, *supra,* § 25:161, p. 408.)

boundary was created by parcel map, and not by an official government survey, it is subject to impeachment. Sherrard could not convey by the recording of a parcel map property that he did not own.

## II

### Appurtenant Easement[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

Sims, J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 2005.

---

[*]See footnote, *ante*, page 656.